MEMORANDUM OF UNDERSTANDING
DISPATCH OPERATIONS

This Memorandum of Understanding (MOU) entered into by and between the Board of Commissioners of Lorain County, Ohio (Board) and the Phil R. Stammitti, in his capacity as the Sheriff of Lorain County (Sheriff) at Elyria, Ohio on the date both parties have affixed their signatures below.

<u>Preamble</u>

WHEREAS, Sheriff as part of his duties operates the Lorain County Sheriff's Office Communication Center at the Lorain County Jail located at 9896 Murray Ridge Road, Elyria, Ohio; and

Whereas, said Communication Center provides dispatch services as part of the law enforcement function of the office of the Sheriff and the Sheriff employs deputies to operate the Communication Center; and further

WHEREAS, the Board operates the Lorain County 911 Center at 322 North Gateway Boulevard, Elyria, Ohio; and

Whereas, the Board provides dispatch services   for emergency services and employs personnel to operate the 911 Center; and

WHEREAS, in order to operate both dispatch centers in a more economically efficient manner, it is the desire of the Board and Sheriff to merge the dispatch services provided at the Sheriff's Communication Center with the 911 Center.

THEREFORE, IN CONSIDERATION OF the mutual promises and covenants herein contained and other good and valuable consideration the Board and Sheriff agree to collaborate in the merging of dispatch services provided by each party so as to achieve a single dispatching unit to be located at the 911 Center. The collaborative effort shall consist of the following steps:

<u>I.   Effective date of merger</u>

    A.    This MOU will take effect upon the date indicated below at which both parties have affixed their respective signatures.

    B.    It will be the goal of the parties to effectuate consolidation of dispatch services at the earliest possible date, preferably the Fall or Winter of 2011. The parties as soon as practicable will agree upon a "switch over" date whereupon mirror dispatching will commence at the 911 Center.

    C.    This MOU will continue from year to year unless terminated by mutual written


EXHIBIT

A

agreement of both parties.

D.     The parties acknowledge that the Board may merge dispatch services of other entities with operations at the 911 Center. Nothing in this MOU shall be deemed to preclude the Board from reaching a separate agreement with other entities for the operation of dispatch services at the 911 Center. Such an agreement may be made through separate agreement between the Board and entities, or may be done through amendment of this MOU. Any separate agreement made by the Board would be   completely   independent of this MOU and not subject to any of the terms and conditions of this MOU unless expressly provided therein.

## II.   Equipment

A.     The parties will collaborate through the use of in-house resources or with the assistance of consultants to identify and describe equipment that will   need to be procured or upgraded to conduct law enforcement dispatching operation as the 911 Center.

B.     The parties will collaborate through the use of in-house resources or with the assistance of consultants to evaluate the 911 Center and identify its present suitability for law enforcement dispatching and identify recommendations for present needs and projected expansion.

C.     The parties will collaborate through the use of in-house resources or consultants to preparer specifications and bids or request for proposals to obtain equipment or modify the 911 Center to accommodate the needs identified pursuant to Section II(A) & (B) immediately above.

## III.   Personnel

The parties recognize that the merger of the dispatch operations will require a consolidation of personnel into one unit. The parties further recognize that certain personnel will conduct safety dispatch services, and it will be conducive to the operations of the merged center to have the input and expertise of the Sheriff and his staff provide assistance, consultation and guidance relating to such activity. The parties agree to collaborate through the use of in-house resources or with the assistance of consultants in the implementation of the following procedures:

A     Re-organizational planning

1.     Prepare a written plan to reorganize the departments addressing staff functions and realignment of supervisory positions and responsibility. This will include a co-management transition plan that incorporates

management goals and ending targets.

2.. The Sheriff and Board shall prepare Standard of Operations Procedures and other work and dispatching procedures for the combined operations at the 911 Center. The procedures shall be not become effective until approved by the Board.

3. Prepare a detailed training program including defined milestones for unification of management and work functions. Establish parameters for background checks.

B. Implementation of staffing changes

1. Meet with and coordinate with USWA to implement additional staffing , including establishing seniority "leveling: dates, work transition and addressing existing bargaining agreements.

2.. Prepare layoff notices for dispatchers employed with the Sheriff.

3. Recruit and hire additional supervisory staff.

4. Conduct interviews and letters of employment at 911 for those dispatchers who are laid off from the Sheriff's office

## IV. Operations

A. Board responsibilities

1. The Board shall be the "Appointing Authority" for all matters pertaining to hiring or terminating employees, and imposing major discipline involving suspension or loss of pay, etc.

2. The Board shall be the Employer and handle all matters regarding contract and union negotiations.

3. The Board shall be fiscal agent and contracting authority.

B. In order to infuse the expertise and experience of the Sheriff, the Sheriff will assist and collaborate in the conduct of day to day operations of the facility which require the qualifications and knowledge of safety force personnel, including the following:

1. Sheriff will create and maintain Standard Operating Procedures (SOPs) which must be approved by the Board along with any major modifications as set forth in Section III(A)(2) above.

2. Imposing minor discipline such as instruction & cautioning, written and reprimands.

3. Sheriff shall conduct background investigations for employees and conduct investigations involving employee behavior issues.

4. The parties shall consult and mutually determine the personnel who shall conduct Pre-Disciplinary Hearings.

5. The parties acknowledge that the Law Enforcement Automated Data System (LEADS), Computerized History Records (CCH) and the Ohio Law Enforcement Gateway System (OHLEG) have restrictions imposed by law which limit persons who may have access to such programs.   The Sheriff shall determine compliance with the law and determine which personnel shall have access to that information.

6. The Board anticipates that it will apply to have the 911 Center obtain approval as a LEADS Agency. Upon approval as a LEADS Agency, the authority for allowing access as provided in Article IV(B)(5) shall be the LEADS Agency to be managed by the Lorain County Sheriff.

7. Sheriff shall swear in persons entitled to access to the information described above in Section (B)(5).

8. Sheriff shall issue warrants and related document preparation.

C. The parties acknowledge that until the Sheriff has completed training of the 911 Center personnel, it will be necessary for the Sheriff to maintain more intensive oversight during transition than will be necessary after transition in order to assure adequate law enforcement. Sheriff will oversee daily operations of dispatch services needed for law enforcement purposes until such time as the parties agree that the staff is properly trained. The training oversight transition period will terminate no later than one year from the date of this MOU unless mutually agreed in writing by the parties that it is necessary to extend the training to assure adequate dispatch services. Upon conclusion of the transition period, the Sheriff will continue with the role as set forth in division (B) of this Article.

V.   Implementation goals

The parties recognize that the merger of two formally separate and independent operations will require a high level of cooperation and exchange of ideas and concepts. Realizing that every aspect of such large endeavor can not be anticipated, it is nevertheless the goal of the parties to accomplish this merger in an expeditious manner so as to obtain the economic benefit of cost savings. The parties further recognize the impact that such a consolidation has upon the personnel involved and agree to consider that impact in the implementation of this MOU

## VI.    Amendment and Approval by LEADS

This MOU may be amended by written agreement of both parties. The parties agree that this Agreement shall be contingent upon the approval of LEADS and NCIC.

WHEREFORE, the parties hereto the Board of Commissioners of Lorain County, Ohio and the Lorain County Sheriff do hereunder set forth their signatures on the dates hereafter indicated.

LORAIN COUNTY BOARD
OF COMMISSIONERS:

Ted Kalo             Date:

Lori Kokoski          Date:

Tom Williams         Date    8/24/2011

LORAIN COUNTY SHERIFF;

Phil R. Stammitti      Date:    08-24-11

Approved as to Form:

Gerald A. Innes, Assistant Prosecuting
Attorney