

# LORAIN COUNTY COMMISSIONERS

**Michelle Hung**          **Matt Lundy**          **David J. Moore**



April 6, 2022

Jeff Young, Director
LC 911
225 Burns Road
Elyria, Ohio 44035

Dear Mr. Young:

Lorain County Board of Commissioners approved Res#22-246 on April 6, 2022 entering into a Consulting Services Agreement with B4 Health Management, LLC, TX in the amount of $72,000.00 effective retroactive to January 1, 2022 - December 31, 2022

This is being forwarded for your information along with the document for your distribution.

Sincerely,

Theresa L. Upton
Clerk

tlu/Enclosure

Cc:     Melissa Tursack, Purchasing Coordinator
        J.R. White, LC Administrator
        Dan Petticord, LC APA
        File



Administration Building  |  226 Middle Avenue, 4th Floor  |  Elyria, Ohio 44035  |  Office: 440-329-5111  |  Fax: 440-323-3357
www.LorainCounty.us

a.11                                                          RESOLUTION NO. 22-246

In the matter of entering into a Consulting Services)
Agreement with B4 Health Management, LLC, TX)              April 6, 2022
In the amount of $72,000.00 effective retroactive   )
to January 1, 2022 - December 31, 2022              )

   WHEREAS, B4 Health Management, LLC provides consulting services to Lorain County 911;
and

   WHEREAS, the services include a 911 Center IT Project Manager who has the overall
responsible for the successful intuition, planning, design, execution, monitoring, implement and
sustainability of the 911 system sand multi-agency support; and

   WHEREAS, this agreement is considered a part hereof to this resolution by reference thereto
and includes an Exhibit A that details the services that will be provided; and

   WHEREAS, this agreement has been reviewed by the Prosecutors office as to form and is
effective retroactive to January 1, 2022 – December 31, 2022.

   FURTHER BE IT RESOLVED, the Lorain County Board of Commissioners do hereby enter
into a Consulting Services Agreement with B4 Health Management, LLC, TX in the amount of
$72,000.00 and will be paid from Account # 3480 0000 100 000 03 6200 0000 Contractual/Purchased
Services

   Motion by Lundy, seconded by Hung to adopt Resolution. Upon roll call the vote taken
thereon, resulted as: Ayes; Lundy & Hung / Nays: Moore
   Motion carried.                                    _____

I, Theresa L. Upton, Clerk to the Lorain County Board of Commissioners do hereby certify that the
above Resolution No. 22-246 is a true copy as it appears in Journal No, 2022 on date of April 6, 2022.

                   Theresa L. Upton, Clerk

## CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT ("Agreement"), is made this 4th day of _April, 2022 between the Board of County Commissioners ("Board") and B4 Health Management, LLC, a Texas limited liability company authorized to do business in Ohio ("Consultant").

### RECITALS:

1.      The Board and the Consultant mutually desire to contract with each other for the Consultant to provide the successful initiation, planning, design, execution, monitoring, implementation, and sustainability of 9-1-1 Systems and multi-agency support ("Project").

2.      The Consultant is uniquely qualified, experienced, and willing to perform said work on the terms and conditions set forth herein.

NOW THEREFORE, for and in consideration of the mutual promises, covenants and agreements hereinafter set forth, the parties to this Agreement, with intent to be legally bound, agree as follows:

### ARTICLE 1: SCOPE AND PERFORMANCE OF WORK

The Consultant agrees to provide assessment services for the Board for the intended development of the Project, such services being described in Exhibit A attached hereto and incorporated herein (collectively, "Services").

The Consultant shall perform the Services consistent with the degree of care and skill exercised by prudent and experienced consultants and firms that perform building assessment and project feasibility services in the State of Ohio ("Standard of Care"). The Consultant shall, at all times, perform the Services in a professional manner and in accordance with all applicable laws, rules, orders, decrees, ordinances and statutes, and otherwise in accordance with the Standard of Care.

The Consultant covenants that in performing the services, it shall use or employ only qualified personnel. The Consultant represents and warrants that it has personnel experienced in providing services for projects similar in scope and complexity to the Services to be provided hereunder, and that the Consultant shall use such personnel so as to provide the Services in accordance with the Standard of Care. The Board may require the Consultant to remove any person providing Services for the Project that the Board reasonably deems unfit for his or her duties.

The Consultant understands that all instruction under this Agreement will come directly from the Director of the Lorain County Emergency 9-1-1 Department. Any work done for any other office or department of the County shall be done under the employ of a separate agreement where applicable, and shall not be billed to this Agreement.

### ARTICLE 2: SCHEDULE OF PAYMENTS

To compensate the Consultant for services rendered, the Board agrees to pay the Consultant an amount not to exceed Seventy-Two Thousand Dollars ($72,000.00) (the "Consulting Fee").

1

The Consultant shall submit, in a format acceptable to the Board, monthly invoices for services performed in a previous calendar month. Each project and each task within a project shall be the subject of a separate invoice. The Consultant shall maintain time and expense records and provide them to the Board upon request.

The Board shall pay all invoices within thirty (30) days of receipt of a proper invoice from the Consultant. If the services rendered do not meet the requirements of this Agreement, the Consultant shall correct or modify the work to comply with this Agreement. The Board may withhold payment for such work until it meets the requirements of this Agreement. Notwithstanding anything to the contrary within Exhibit A, the County reserves the right to review all invoiced unplanned after-hour services or services provided outside of the normal scope and weekly provision. To the extent such services are deemed to be related to the Consultant's work with the County's emergency 9-1-1 department, payment for such services are subject to approval on that basis. The County reserves the right to reject invoices for services in connection with any activities not relating to the County's emergency 9-1-1 operations.

## ARTICLE 3: TERM

The term of this Agreement shall commence upon the full execution hereof by the Board and the Consultant, and shall remain in full force and effect until the full completion of the Services, as confirmed by the Board in writing, or the earlier termination of this Agreement as hereinafter provided.

## ARTICLE 4: TERMINATION

This Agreement may be terminated by the Board upon five (5) business days' prior written notice to the Consultant in the event of a breach hereof by the Consultant, provided that the Consultant does not cure such breach within the five (5) business day period after it receives written notice of the same, except that there shall be no cure period in the event of the Consultant's failure to maintain insurance as required herein. This Agreement may be terminated at any time by the Board for its convenience upon (30) days' prior written notice. Also, in the event of termination for convenience, the Board shall pay the Consultant for the Services actually provided (but not in excess of the Consulting Fee), but not for lost profit and overhead.

## ARTICLE 5: INSPECTION AND AUDIT

The Consultant shall maintain all books, records, documents, and other evidence pertaining to the costs and expenses allowable under this Agreement in accordance with generally accepted accounting practices. All such books and records required to be maintained by this Agreement shall be subject to inspection and audit by representatives of the Board and/or the Ohio State Auditor at all reasonable times, and the Consultant shall afford the proper facilities for such inspection and audit. Representatives of the Board and/or the Ohio State Auditor may copy such books, accounts, and records if necessary to conduct or document an audit. The Consultant shall preserve and make available all such books of account and records for a period of three (3) years after final payment under this Agreement. In the event that any audit or inspection identifies any discrepancy in such financial records, the Consultant shall provide the Board with appropriate clarification and/or financial adjustments within thirty (30) calendar days of notification of the discrepancy.

## ARTICLE 6: INDEPENDENT CONTRACTOR

The Consultant and the Board understand and expressly agree that the Consultant is an independent contractor in the performance of each and every part of this Agreement. The Consultant expressly represents, warrants, and agrees that the Consultant's status as an independent contractor in the

2

performance of the work and services required under this Agreement. The Consultant, as an independent contractor, assumes the entire responsibility for carrying out and accomplishing the services required under this Agreement. The Consultant shall make no claim of Board employment nor shall the Consultant claim any related employment benefits, social security, retirement benefits, or any other pertinent government employment benefits.

### ARTICLE 7: OWNERSHIP OF DOCUMENTS AND REPORTS

The Consultant agrees that all field data, analytical results, studies, drawings, maps, computations, plans, specifications, estimates and other documented evidence of the work prepared by or for Consultant under the provisions of this Agreement, shall become and remain the property of the Board upon termination or completion of the Services. If applicable, the Board requires all drawings to be submitted in AutoCAD release 14 or later, with Board supplied floor plans (where available) to be used as base plans. AIA layering standards will apply. If applicable, Consultant shall provide the Board with both a hard copy and an electronic copy of all plans, including, without limitation, as-built drawings to be given to the Board upon termination or completion of the Services.

### ARTICLE 8: CONFIDENTIALITY

The Consultant shall treat as confidential and not disclose to third parties, or use for its own benefit, any of the Board's confidential or proprietary information except to the extent such disclosure may be required by applicable laws, rules or regulations, provided, however, that the Consultant shall use its best efforts to notify the Board prior to making any such disclosure.

### ARTICLE 9: INDEMNIFICATION

To the fullest extent permitted by law, the Consultant shall indemnify and hold harmless, the Board, Lorain County, and their respective representatives, departments, agents, consultants, employees and contractors, from and against claims, damages, losses and expenses, including, but not limited to, reasonable attorneys' fees arising out of or in connection with any negligent acts, errors or omissions, of the Consultant and/or its employees, officers, agents, representatives, contractors, consultants or subconsultants. The Consultant agrees to pay all damages, costs and expenses of the Board in defending any action arising out of the aforementioned acts or omissions.

### ARTICLE 10: INSURANCE

The Consultant shall maintain professional liability insurance in the amount of $2,000,000 per claim and $2,000,000 in the aggregate, and commercial general insurance in the amount of $2,000,000 per occurrence and $2,000,000 in the aggregate. The Consultant shall name the Board as an additional insured on its certificate of commercial general insurance for the duration of this Agreement and shall maintain such insurance for a period of one year after the termination of this Agreement.

### ARTICLE 11: DEFAULT

Notwithstanding anything to the contrary contained in this Agreement, if 1) the Consultant shall be adjudicated bankrupt or becomes insolvent; 2) a receiver, trustee, administrator, custodian or other person or entity acting pursuant to any agreement, law, resolution, rule, order or license or any governmental body, agency or department shall take possession or control of all or a substantial portion of the Consultant's assets or affairs; 3) the Consultant shall give notice of, petition for, enter into or make an assignment for the benefit of creditors or shall file or have filed against it a petition, pleading or any other like document of bankruptcy or insolvency or for reorganization or a petition, pleading or other like

3

document demanding or requesting the appointment of a trustee, receiver, administrator, custodian or other person or entity to act for or on behalf of the Consultant or its creditors; or 4) any writ, execution, attachment or other warrant or authority, however denominated, shall be issued against the Consultant or any of the Consultant's property, and such adjudication, appointment, assignment, petition, writ, execution, attachment or other warrant or authority shall not be set aside, vacated, discharged or bonded within sixty (60) days after the issuance of the same, then the Consultant shall be deemed in default under this Agreement and the Board may terminate this Agreement without the requirement of giving the Consultant notice of such default.

### ARTICLE 12: COMPLIANCE; NON-DISCRIMINATION

The Consultant agrees to comply with all applicable federal, state and local laws in the performances of the Services. The Consultant accepts full responsibility for payment of all unemployment compensation insurance premiums, worker's compensation premiums, all income tax deductions, pension deductions and any and all other taxes or payroll deductions required for the Consultant and all employees engaged by the Consultant for the performance of the Services by this Agreement, and shall defend, indemnify and hold the Board harmless from and against any and all claims, demands and suits arising from its failure to pay such taxes. The Consultant represents and warrants that it meets, and will continue to meet, any and all licensing requirements of the State of Ohio. During the performance of this Agreement, the Consultant will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, ancestry, handicap, age, political belief or place of birth.

### ARTICLE 13: ASSIGNMENTS

The parties expressly agree that this Agreement shall not be assigned by the Consultant without the prior written approval of the Board.

### ARTICLE 14: NOTICES

All notices concerning disputes under this Agreement shall be in writing and shall be hand delivered, sent by overnight courier, sent by certified or regular U.S. mail, or sent by email; to the parties as follows:

| | |
|---|---|
| If to the Board: | Lorain County Board of Commissioners<br>226 Middle Avenue, Fourth Floor<br>Elyria, Ohio 44035<br>Attn: Theresa Upton |
| With a copy to: | Lorain County Prosecutors Office<br>225 Court Street, Third Floor<br>Lorain, Ohio 44035<br>Attn: Dan Petticord |
| If to the Consultant: | B4 Health Management, LLC<br>159 Crocker Park Blvd., Ste. 433<br>Westlake, OH 44145<br>Attn: Christie Messinger |

## ARTICLE 15: GOVERNING LAW

This Agreement and any modifications, amendments, or alterations, shall be governed, construed and enforced under the laws of Ohio. Any legal proceeding relating in any way to this Agreement may be brought only in the appropriate forum in Lorain County, Ohio.

## ARTICLE 16: INTEGRATION AND MODIFICATION

This instrument embodies the entire agreement of the parties. There are no promises, terms, conditions or obligations other than those contained herein; and this Agreement shall supersede all previous communications, representations or agreements, either written or oral, between parties to this Agreement. This Agreement shall not be modified in any manner except by instrument, in writing, executed by the parties to this Agreement.

## ARTICLE 17: CONFLICT

In the event of any conflict between the language in the body of this Agreement and any exhibits, attachments, addenda, etc., the language in the body of this Agreement shall control exclusively.

## ARTICLE 18: SEVERABILITY

If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent be held invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which is held invalid or unenforceable, shall not be affected thereby and each term and provision of this contract shall be valid and enforced to the fullest extent permitted by law.

## ARTICLE 19: COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed to be an original document, but together shall constitute one instrument. Facsimile, pdf, or other electronic signatures shall be binding upon the parties.

## ARTICLE 20: EXHIBITS

The term "Agreement" means and includes the following exhibits, which are attached hereto and incorporated herein: Exhibit A – Scope of Services. In the event of any conflict or ambiguity between the provisions of this Agreement and the terms of any Exhibit, the provision requiring the higher standard or service shall control.

5

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the later of the signature dates included below.

LORAIN COUNTY BOARD
OF COMMISSIONERS

MATT LUNDY                President

B4 HEALTH MANAGEMENT, LLC

Signature

Christie Messinger, President
Printed Name, Title

4-4-2022
Date

APPROVED AS TO FORM

Assistant Prosecutor
DAN PETTICORD

6

EXHIBIT A

Scope of Services

The 9-1-1 Center IT Project Manager is a person who has the overall responsibility for the successful initiation, planning, design, execution, monitoring, implementation, and sustainability of 9-1-1 Systems and multi-agency support.

Duties to include:
- Scheduling/planning monthly build meetings with various topics to be covered during the meeting
- Training for end users on all modules of the New World System
- Planning and testing of new upgrades to the software to be implemented with the help of the build team
- Troubleshooting
- Support contact for third party vendors
- Ensure all modules of the programs are operating correctly
- Assist with loading the New World System onto various computers/MDTs throughout the various agencies
- Create and run various DSS and DAM reports for various agencies on the New World System. Both agency specific and county wide reports
- Track help tickets and follow up on the status of those help tickets
- XML and interface feeds from 9-1-1.
- Liaison to Chief of Police and Fire Chief New World Sub-Committee
- Manage integrity of data in the system
- Programming/Development for required changes in Mobile forms, and parsing
- Internet Explorer for DSS Dashboard, and Web Briefing
- Project Plan
  - Establish full report with proposed project plan
  - Presentation of proposed project
- Implementation and rollout according to 911 projects.

**Fees, payments, and service terms**

For Project Consulting/System Management, training, process review as per job role:
- $6,000.00 per month which includes 20 hours per week. For unplanned outage, capital projects, activities after normal business hours (defined as 0800-1500), hours exceeding the 20-hour weekly on-site commitment detailed in the previous bulleted paragraph, and system issues: any unplanned after-hour services or services provided outside of the normal scope and weekly provision will be billed at $90/hour, however, it is understood that all invoices for such services shall be first approved for payment in writing by the Lorain County 9-1-1 Director.