TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

## IN THE COURT OF COMMON PLEAS
## LORAIN COUNTY, OHIO

| | |
|---|---|
| **LORAIN COUNTY SHERIFF,** | CASE NO. 26CV000634 |
| Plaintiff/Counterclaim Defendant, | JUDGE THOMAS A. THEODOSIO |
| vs. | **JURY DEMAND ENDORSED HEREON** |
| **THE LORAIN COUNTY BOARD OF COUNTY COMMISSIONERS,** | |
| Defendant/Counterclaimant. | |

## DEFENDANT'S AMENDED COUNTERCLAIM AGAINST PLAINTIFF/COUNTERCLAIM DEFENDANT

Defendant/Counterclaimant Lorain County Board of County Commissioners (the "Board") hereby submits its Amended Counterclaim against Plaintiff/Counterclaim Defendant Lorain County Sheriff (the "Sheriff") and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Counterclaimant Lorain County Board of County Commissioners is a political subdivision organized and existing under the laws of the State of Ohio, with offices at 226 Middle Avenue, Elyria, Ohio 44035. The Board is vested by statute with the authority to operate the Lorain County 9-1-1 Center, to employ its personnel, to enter into contracts on its behalf, and to serve as fiscal agent and contracting authority for Lorain County's emergency communications systems. *See* R.C. Chapter 128.

2.      Counterclaim Defendant Sheriff Jack M. Hall is the duly-elected Sheriff of Lorain County, Ohio.

3.      The Court has jurisdiction under R.C. 2305.01 and the Ohio Constitution.

4.      Venue is proper under Civ.R. 3(C)(1)-(4) and 3(C)(6).

1



EXHIBIT

C

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

## FACTUAL BACKGROUND

5.     The Board incorporates by reference its answers and denials to the Sheriff's Complaint.

### The Board's Operations of the Lorain County 9-1-1 Center and the County's Emergency Communications

6.     In what can only be described as a political power grab, the Sheriff has wrongfully and without any authority sought to usurp the Board's administration of the Lorain County 9-1-1 Center and the County's emergency communications systems.

7.     Aside from stymieing Lorain County 9-1-1 operations, the Sheriff's misconduct and unauthorized interference has resulted in the loss of Lorain County 9-1-1's principal IT consultant (the "Consultant")[1] and baseless inquiries from Ohio LEADS. The Sheriff now wastes taxpayer dollars on this lawsuit.

8.     The Lorain County 9-1-1 Center provides 24-hour emergency dispatching services for Police, Fire, and EMS across Lorain County. The 9-1-1 Center operates the County's emergency communication systems, including its emergency radio systems. Pursuant to R.C. Chapter 128, the Board operates the County's 9-1-1 Center and its emergency communication systems with funding from the County's 9-1-1 levy. The County 9-1-1 Director, Kurt Scholl, is in charge of daily operations at the Center.

9.     The Board first started providing emergency dispatch and radio services across Lorain County in the early 1980s and the Lorain County 9-1-1 Center dates back to 1989.

10.     In 2011, then-County Sheriff, Phil Stammitti, sought to merge the Sheriff's small dispatching office at the Lorain County Jail into the Lorain County 9-1-1 Center. On

---

[1] The Sheriff refers to the Consultant in his Complaint as the "vendor." (*See* Pl.'s Compl., at ¶ 25).

2

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

August 24, 2011, the Board and the Sheriff entered into the Memorandum of Understanding for Dispatch Services ("MOU") (attached as Exhibit A to Pl.'s Compl.).

11.     Under the MOU, the dispatch services previously performed at the Sheriff's Communication Center were consolidated into the Lorain County 9-1-1 Center. As a result, the Board retained its status as the "Appointing Authority" for purposes of employment at the Lorain County 9-1-1 Center, the exclusive employer for purposes of union and contract negotiations, and the sole fiscal agent and contracting authority for the 9-1-1 Center. (MOU, at Art. IV).

12.     The MOU affords the Sheriff "collaborative" but subordinate, "advisory" duties to the Board, including creating and maintaining Standard Operating Procedures (subject to Board approval), conducting employee background checks and investigations of the Board's employment hires, and imposing minor employee discipline.

13.     Relevant here, the MOU also acknowledges that Ohio LEADS (Law Enforcement Automated Data Systems), Computerized History Records (CCH), and the Ohio Law Enforcement Gateway System (OHLEG) have restrictions imposed by law on who may access such programs. The Sheriff's oversight duties under the MOU are limited to determining whether a person's access to these databases complies with existing law. (MOU, at Section IV(B)(5)). The MOU does not permit the Sheriff to operate or control the County's emergency systems themselves or who accesses them.

14.     The MOU was expressly contingent on the approval of LEADS and NCIC. (MOU, at Art. VI). It is unknown whether LEADS and NCIC provided such approval.

15.     Prior to the MOU, the Sheriff played no role in the operation of Lorain County 9-1-1 or emergency dispatching services for the majority of Lorain County. That did not change after the MOU.

3

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

16.     Indeed, in December 2023, as debate over improvements to the County's emergency radio systems heated up, Sheriff Stammitti explicitly rejected any participation in collaborating on the upgraded emergency radio systems, writing "[a]s Sheriff of Lorain County, I want to go on record that I do *not* support or want to join in on this MARCS System that the County Officials have negotiated on their own and are attempting to force us to."

17.     As noted in the Sheriff's Complaint, Lorain County 9-1-1 also has certain LEADS-related agreements with the Sheriff specific to Lorain County 9-1-1's access to LEADS while performing Sheriff's Office-related services. (*See* Pl.'s Compl., at Ex. C-2).

18.     Lorain County 9-1-1's access to LEADS is governed by *several* management control agreements with numerous local law enforcement communities. The LEADS-related work that Lorain County 9-1-1 performs on behalf of the Lorain County Sheriff is only a small part of Lorain County 9-1-1's duties of providing 24-hour emergency dispatching services for Fire, EMS, and Police across Lorain County. Lorain County 9-1-1 remains in full compliance with all relevant LEADS-related agreements, including its management control agreements, holder of record agreements, and criminal justice information exchange agreements with local law enforcement agencies.

19.     The Sheriff completely misunderstands that the Lorain County 9-1-1 Center has independent authority to access LEADS-related data. The Sheriff further misunderstands how the Lorain County 9-1-1 Center operates and conflates the Lorain County 9-1-1's Tyler New World system with the 9-1-1 Center's access to LEADS-related information. The Sheriff has intentionally misconstrued the MOU and the management control agreement to falsely assert control over the Lorain County 9-1-1 Center's operations.

4

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

## The Board's Engagement of the Consultant

20.     For the past several years, the Board has engaged the Consultant to provide professional IT consulting related services in connection with the County's Tyler New World public safety system used at Lorain County 9-1-1. These engagements were reduced to one-year contracts, which are publicly available. The Board does not attach these contracts because they are publicly available, and the Sheriff is in possession of them and is otherwise aware of the terms.

21.     The County's Tyler New World system, among other things, provides computer automated dispatch services. It is aimed at streamlining emergency information for dispatchers and first responders. While the County's Tyler New World system interfaces with LEADS for access to certain law enforcement-related information, it is much broader than that.

22.     As a result, the Consultant's contract with the County was not LEADS-specific. Nonetheless, the Consultant has at all relevant times remained certified to access any LEADS systems within Lorain County 9-1-1.

23.     The Consultant possessed specialized expertise regarding the Tyler New World system, and the Consultant's services were integral to the implementation, monitoring, and operations of the County 9-1-1 Center.

## The Sheriff's Unilateral Campaign against the Consultant and the Board

24.     In or around November 2025, the Sheriff claimed to have initiated a criminal investigation into the Consultant's principal. The Sheriff referred to the investigation as involving "felony-level offenses." As a result of this purported criminal investigation, the Sheriff advised the Board that both the Consultant and its principal should be immediately removed "from any role, access, or involvement with Lorain County

5

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

911." The Sheriff falsely represented that he had authority to remove the Consultant "from all duties related to the 911 agency as related to LEADS, NCIC, and CJIS effective immediately..."

25. The Consultant could perform its contractual duties without accessing LEADS, yet the Sheriff demanded that the Consultant be completely excluded from Lorain County 9-1-1 and all of its systems.

26. On information and belief, employees or agents of the Sheriff also threatened the Consultant's principal with criminal prosecution if she continued to perform services for the Board under the consulting agreement or accessed Lorain County 9-1-1.

27. To date, the Sheriff refused to identify what "felony-level offenses" the Consultant is accused to have committing and neither the Consultant nor its principal have been charged with a crime. Moreover, the Sheriff has never provided any authority for why a purported investigation into the Consultant, that resulted in no charges and no credible allegations of misconduct, should have resulted in the Consultant being completely excluded from Lorain County 9-1-1.

28. In addition to the Sheriff's specious accusations of criminal investigation, on December 12, 2025, the Sheriff unilaterally complained to Ohio LEADS alleging a "CJIS security violation" at Lorain County 9-1-1. The genesis of the alleged "security violation" was the Sheriff's contrived investigation into the Consultant. At that time, the Sheriff knew or should have known that the Consultant's access to the Tyler New World had ceased and, more importantly, that the Consultant was fully accredited and authorized to access LEADS-related data. Accordingly, the Sheriff knew that there was no potential or actual LEADS security allegation.

6

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

29. On information and belief, the Sheriff sent his December 12, 2025 letter to Ohio LEADS without privilege and for the purpose of interfering with the Consultant's relationship with the Board and asserting additional control over Lorain County 9-1-1.

30. As a direct and proximate result of the Sheriff's actions (or other individuals under the Sheriff's direction or control), the Consultant refused to provide further services to the Board and ended the ongoing contractual relationship with the Board.

31. The Sheriff's unlawful and intentional assault on Lorain County 9-1-1 continued into 2026. In or around February, the Sheriff again falsely reported to Ohio LEADS that the Lorain County 9-1-1 Center was in breach of the Management Control Agreement with the Lorain County Sheriff's Office. In making such a report, the Sheriff would have known that it was false and known that it risks serious injury to Lorain County 9-1-1 Operations. Indeed, in February 2026 correspondence from Ohio LEADS Information Security Officer, Kevin Locke, threatened sanctions under Ohio Admin.Code 4501:2-10-11 and potential loss of access to LEADS and termination of Lorain 9-1-1's Originating Agency Identifier (ORI).

32. Loss of access to LEADS would materially injure Lorain County 9-1-1 Center's operations and its relationships and contracts with the other agencies that use Lorain County 9-1-1 for emergency dispatching.

33. On April 30, 2026, The Sheriff and his office executed a criminal search warrant (the "Warrant") for two Lorain County facilities: (a) the Lorain County 911 Center, and (b) the County Administration Building. The search warrant was signed by Lorain County Common Pleas Judge Rothgery, who had previously recused himself from this action.

7

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

34. The Warrant commanded the seizure of, among other things: filing cabinets, office furniture, computer workstations, servers, network switches and routers, cloud servers, memory chips, all data storage devices, printed documents, notes, manuals, and all electronic communications from January 1, 2024 through the present for named Board officials and all 911 Center employees.

35. During the execution of the Warrant, the Sheriff's investigators instructed the Lorain County 9-1-1 Center to power off its security cameras, presumably so the Sheriff's search would not be recorded.

36. The scope of the Warrant includes the seizure of the same documents that the Sheriff has requested in this action and through discovery.

37. Specifically, Attachment B to the Warrant enumerates 32 categories of items to be seized. A comparison with the relief requested in the Sheriff's Complaint shows that Items 1-31 are virtually identical. Item 32 of the Warrant vaguely seeks "Electronic mail (email) and messaging (terminal, chat and utilized messaging applications) *which document the violations identified herein* by the Lorain County Board of Commissioners, their employees, contractors, or designee from January 1, 2024, through present." (*See* Warrant, emphasis added).

38. The Warrant was obtained during the pendency of this action, and *after* the Sheriff propounded discovery on the County seeking the same information.

39. The Warrant purports to be set in motion in proper form and issued by a judge after finding probable cause.

40. On the morning that the Sheriff executed the Warrant, the Sheriff posted a video to Facebook, wherein he claimed that the Lorain County Sheriff's Office's "Public Corruption Unit" was "executing multiple search warrants" on County offices. In the

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

video, the Sheriff did not disclose that the *single* warrant sought the same documents and information that had been requested in this lawsuit.

41.     The alleged criminal investigation underlying the Warrant is a ploy. The Warrant, including the timing of its execution, was initiated for ulterior purposes, including but not limited to, seeking documents related to the civil lawsuit outside of civil discovery rules, gaining political leverage over the Board and Commissioners and sullying their reputations, and gaining leverage in this lawsuit. The Warrant was not sought for a legitimate purpose.

42.     This abuse of the criminal justice system by the Sheriff has caused direct damage to the Lorain County government and its taxpayers. By raiding the 911 Center for political and personal purposes, the Sheriff has jeopardized emergency response operations, which is a threat to anyone who may call 911 for emergency assistance during the raid. Further, by disrupting the operations of the County government, the Sheriff has threatened the tax dollars and resources of all Lorain County citizens.

43.     The Sheriff's actions here are committed in bad faith or in a wonton or reckless manner and are outside the scope of his duties.

### Counterclaim I
**(Tortious Interference with Contractual Relations)**
**(Against the Sheriff in his individual and official capacity)**

44.     The Board incorporates by reference each of the preceding allegations.

45.     The Board, through itself and Lorain County 9-1-1, maintains contracts with the Consultant and other public safety agencies around Lorain County.

46.     The Sheriff is aware of these contractual relationships.

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

47.     The Sheriff, through himself, his employees, and his agents, intentionally and without privilege, interfered (and continues to interfere) with the Board's contractual relationships.

48.     As a result of the Sheriff's interference, the Consultant terminated its contractual relationship with the Board and the contractual relationships between Lorain County 9-1-1 and other public safety agencies are at substantial risk of material injury. The Board continues to suffer damages as a direct and proximate result of the Sheriff's intentional interference.

49.     As a result of the Sheriff's misconduct, the County has suffered monetary damages in excess of $100,000.

**Counterclaim II**
**(Tortious Interference with Business Relationships)**
**(Against the Sheriff in his individual and official capacity)**

50.     The Board incorporates by reference each of the preceding allegations.

51.     The Board maintains business relationships with the Consultant and other public safety agencies throughout Lorain County.

52.     The Sheriff has knowledge of the Board's business relationships.

53.     The Sheriff, through himself, his employees, and his agents, intentionally and without privilege, interfered with the Board's business relationships.

54.     As a result of the Sheriff's interference, the Consultant's business relationship with the Board has been materially injured and the business relationships between Lorain County 9-1-1 and other public safety agencies are at substantial risk of further material injury. The Board continues to suffer damages as a direct and proximate result of the Sheriff's intentional interference.

10

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

55. As a result of the Sheriff's misconduct, the Board has suffered monetary damages in excess of $100,000.

## Counterclaim III
### (Breach of Contract – MOU)
### (In the alternative)

56. The Board incorporates by reference each of the preceding allegations.

57. If the MOU is a valid and enforceable contract, the Sheriff's actions over the last several months constitute a material breach of the MOU, relieving the Board of any and all compliance with its terms.

58. If the MOU is a valid and enforceable contract, the Board has fulfilled its obligations under the MOU.

59. If the MOU is a valid and enforceable contract, the Sheriff has materially breached the MOU by, among other things, interfering with the Board's relationship with the Consultant, falsely reporting alleged security violations to Ohio LEADS, and falsely asserting authority over Lorain County 9-1-1's operations.

60. As a direct and proximate result of the Sheriff's material breaches, the County has been deprived of the benefit of its bargain and suffered monetary damages in excess of $100,000.

## Counterclaim IV
### (Abuse of Process)
### (Against the Sheriff in his individual and official capacity)

50. The Board incorporates by reference each of the preceding allegations.

51. The Warrant purports to be set in motion in proper form and issued by a judge after finding probable cause.

52. The Warrant was not sought for a legitimate purpose. The Warrant, including the timing of its execution, was initiated for ulterior purposes, including but not

11

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

limited to, seeking documents related to the civil lawsuit outside of civil discovery rules, gaining political leverage over the Board and Commissioners and sullying their reputations, and gaining leverage in this lawsuit.

53. The Sheriff's abuse of process in initiating and executing the Warrant has caused direct damage to the Board, the Lorain County government, and its taxpayers. Because of the Sheriff's conduct as described herein, the Board, the Lorain County government, and the citizens of Lorain County will continue to suffer damage.

## PRAYER FOR RELIEF

**WHEREFORE,** for its counterclaims, the Board prays for judgment to be entered against the Sheriff as follows:

a.   an order finding that the Sheriff tortiously interfered with the Board's contractual and business relationships;

b.   in the alternative, if the MOU is determined to be a valid contract, an order finding that the Sheriff materially breached the MOU;

c.   an order for actual and/or punitive damages in an amount to be determined at trial;

d.   any other and further order in law or equity to which the Board may be entitled to under the law, including interest and attorneys' fees.

Respectfully submitted,

GEMBALA, MCLAUGHLIN
& PECORA CO., LPA

*/s/ Stephen M. Bosak*
Ryan M. Gembala (0079431)
Stephen M. Bosak (0092443)
Dennis M. O'Toole (0003274)
5455 Detroit Rd.
Sheffield Village, Ohio 44054
Tel:    (440) 930-4001
Fax:    (440) 934-7208
Email:  rgembala@gmpfirm.com
        sbosak@gmpfirm.com

12

TOM ORLANDO
Lorain County Clerk of Courts
26CV000634
FILED: 05/13/2026 03:36 PM

dotoole@gmpfirm.com
*Counsel for Defendant*

## JURY DEMAND

The Board hereby demands a trial by jury on all issues so triable.

*/s/ Stephen M. Bosak*
Stephen M. Bosak (0092443)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on May 13, 2026 via electronic mail to the following:

Richard D. Panza
Thomas R. Theado
Michael R. Nakon
WICKENS HERZER PANZA
35765 Chester Road
Avon, OH 44011-1262
E-mail: RPanza@WickensLaw.com
        TTheado@WickensLaw.com
        MRNakon@WickensLaw.com
        Docket@WickensLaw.com
(440) 695-8000 (Main)
(440) 695-8098 (Fax)
*Counsel for Plaintiff*

*/s/ Stephen M. Bosak*
Stephen M. Bosak (0092443)
Counsel for Defendant

13