IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

| | |
|---|---|
| SHERIFF OF LORAIN COUNTY, OHIO<br>9896 Murray Ridge Road<br>Elyria, Ohio 44035 | CASE NO. |
| | JUDGE |
| Plaintiff | |
| v. | |
| THE LORAIN COUNTY, OHIO, BOARD OF<br>COMMISSIONERS<br>226 Middle Avenue, 4th Floor<br>Elyria, OH 44035 | |
| Defendant | **COMPLAINT** |

\* \* \* \*

## **INTRODUCTION**

1. This dispute involves the operation and management of the Lorain County 911 Center, also known as the Lorain County 911 Agency. In 2011, Plaintiff and Defendant entered into a Memorandum of Understanding – Dispatch Operations ("MOU"), a true copy of which is attached as Exhibit A, which merged the dispatch services which had been separately provided by the Sheriff's Communication Center and the 911 Center, so as to achieve a single dispatching unit to be located at the 911 Center. The MOU expressly required the collaboration of the Parties not only for the merger of emergency 911 dispatch services in Lorain County, but also for operation of the services after merger. Despite the MOU and its duties and obligations,


EXHIBIT
W

Defendant is operating and controlling the emergency 911 dispatch service for Lorain County to the exclusion of Plaintiff. Contrary to the MOU, Defendant has failed to collaborate with Plaintiff, and has particularly refused to provide critical access and information regarding the 911 Center's operations.

2.    Plaintiff is Lorain County's chief law-enforcement officer and bears the statutory duty to "preserve the public peace," R.C. 311.07(A). As such, Plaintiff has a significant interest – by legal obligation and pursuant to the MOU – in ensuring the effective operation of the 911 Center and its compliance with the rules of the FBI Criminal Justice Information System ("CJIS") and the National Crime Information Center ("NCIC") of the Federal Bureau of Investigation and the Law Enforcement Automated Data System ("LEADS") of the State of Ohio. Consistent with, and in performance of his duties, Plaintiff has diligently pursued numerous efforts at obtaining Defendant's voluntary cooperation and provision of the requested access and information. Defendant's refusal to provide the requested access and information regarding the 911 Center to Plaintiff amounts to a breach of the MOU, threatens the continued licensure of the Center, and jeopardizes the safety of all Lorain County residents.

3.    Plaintiff has come to the regrettable conclusion that Defendant will not voluntarily cooperate and provide the requested access and information and that Plaintiff's efforts to obtain Defendant's voluntary cooperation have failed, leaving judicial enforcement of the MOU the only alternative. This lawsuit seeks only to enforce the rights and obligations of the MOU, and to protect the best interests of all Lorain County residents.

## PARTIES, JURISDICTION, AND VENUE

4.    Plaintiff is Lorain County's chief law-enforcement officer, operating pursuant to the laws of the State of Ohio.

5.    Defendant is the chief administrative authority for Lorain County.

29461-30\3155184.docx                    2

6.      This Court has subject-matter jurisdiction over this case under, and pursuant to, Section 4 of Article IV of the Ohio Constitution, R.C. 2305.01, R.C. 2721.02(A), and R.C. 2727.03.

7.      This Court has personal jurisdiction over Defendant under, and pursuant to, R.C. 2307.382(A)(1) and (2) in that Defendant transacts business in the State of Ohio and contracts to supply services and goods in this State.

8.      Venue is proper in this Court under, and pursuant to, Ohio Rule of Civil Procedure 3(C)(2) and (3) in that Lorain County, Ohio, is a county in which Defendant has its principal place of business and in which Defendant conducted the activity that gives rise to Plaintiff's claim for relief.

## STATEMENT OF FACTS

9.      Prior to 2011, Defendant was operating the Lorain County 911 Center at 322 North Gateway Boulevard, Elyria, OH 44035, for the dispatch of emergency services in Lorain County. Defendant had been operating the 911 Center since approximately 1983.

10.     Also prior to 2011, Plaintiff was operating the Lorain County Sheriff's Office Communication Center at 9896 Murray Ridge Road, Elyria, OH 44035, for the dispatch of emergency services in Lorain County.

11.     On or about August 24, 2011, the Parties entered into the MOU. See Exhibit A.

12.     Thereafter, under and pursuant to R.C. 305.25, Defendant adopted Resolution No. 11-557 approving and entering into the MOU, effectuating the same. A true copy of that Resolution is attached hereto as Exhibit B.

13.     The MOU merged the 911 Center and the Sheriff's Communication Center into one, central dispatch system.

14. The MOU, at page 1, provided specifically that "the Board and Sheriff agree to collaborate in the merging of dispatch services provided by each party so as to achieve a single dispatching unit to be located at the 911 Center."

15. The MOU, at pages 2-3, further provided, among other items, for the Parties' mutual, collaborative effort to: merge, procure, or upgrade the necessary equipment; prepare a written plan to reorganize the departments addressing staff functions and realignment; and merge staff personnel, including reorganization and staffing changes at the 911 Center.

16. With respect to personnel operations, the MOU, at page 2 (emphasis added), affirmed that "[t]he parties further recognize that certain personnel will conduct safety dispatch services, and it will be conducive to the operations of the merged center to have *the input and expertise of the Sheriff* and his staff provide assistance, consultation and guidance relating to such activity."

17. The MOU further provided, at page 4, certain operation rights and obligations upon Plaintiff. Specifically, the MOU provided that:

> In order to infuse the expertise and experience of the Sheriff, the Sheriff will assist and collaborate in the conduct of day to day operations of the facility which require the qualifications and knowledge of safety force personnel, including the following:
>
> . . .
>
> 5. The parties acknowledge that the Law Enforcement Automated Data System (LEADS), Computerized History Records (CCH) and the Ohio Law Enforcement Gateway System (OHLEG) have restrictions imposed by law which limit persons who may have access to such programs. The Sheriff shall determine compliance with the law and determine which personnel shall have access to that information.
>
> 6. The Board anticipates that it will apply to have the 911 Center obtain approval as a LEADS Agency. Upon approval as a LEADS Agency, the authority for allowing access as provided in

Article IV(B)(5) shall be the LEADS Agency to be managed by the Lorain County Sheriff.

18. Acknowledging the authority of LEADS regarding the effectiveness of the MOU, the MOU provided, at page 5, that "[t]he parties agree that this Agreement shall be contingent upon the approval of LEADS and NCIC."

19. Further still, Plaintiff and the 911 Center have, over the years since the MOU, executed multiple Management Control Agreements to establish the minimum required oversite by Plaintiff over the 911 Center, as a non-Criminal Justice Agency ("NCJA"), to comply with LEADS regulations and state law. The two most recently executed Management Control Agreements are attached as Exhibit C-1 and Exhibit C-2.

20. Lorain County's 911 Center, which is identified in the Management Control Agreements as "Lorain County 911 Agency," is a County Department administered by Defendant. Defendant directly hires and appoints Lorain County's 911 director/coordinator, pursuant to R.C. 128.05. Defendant is the review board/committee for/of Lorain County's 911 Center pursuant to R.C. 128.06(C)(2), and is the governing body for Lorain County's 911 Center, as evidenced by the Minutes of the March 25, 2025. Meeting of Lorain County 9-1-1 Review Board, a true copy of which is attached as Exhibit D. The 911 Center is an arm of, and under the direct supervision and control of, Defendant.

21. The Management Control Agreements provide that Plaintiff has the sole authority regarding the restriction of access to CJIS information and compliance with CJIS security policy.

22. In short, Plaintiff's retention of full control and management authority over the 911 Center with regard to LEADS and CJIS information was cemented not only by the MOU, but also by each successive Management Control Agreement.

23. In whole, the MOU repeatedly mandated collaboration between the Parties, such that the merged 911 Center was to be operated by the Parties collaboratively.

24. Despite this longstanding contract between the Parties for their collaborative operation of the 911 Center, Defendant has effectively taken unilateral control thereof, and has refused to collaborate with Plaintiff in any manner.

25. Pursuant to the reserved authority provided by the MOU to regulate LEADS compliance and access, Plaintiff undertook an investigation regarding a vendor's potential criminal conduct, and thereafter sought to restrict that vendor's access to the 911 Center's LEADS and CJIS information.

26. Lorain County uses Tyler Technologies' New World ("Tyler / New World") records management system in its 911 emergency services and law enforcement operations.

27. Because Lorain County centrally uses Tyler / New World's records system, local law enforcement agencies must maintain access to that system in order to view/obtain needed records.

28. The Tyler / New World records management system is considered a part of the CJIS system. as much as LEADS, NCIC, and OHLEG are.

29. Given Plaintiff's investigation regarding the vendor's potential criminal conduct, Plaintiff was also required to restrict the vendor's access to the Tyler / New World system.

30. Pursuant to Plaintiff's authority, on November 7, 2025, Plaintiff met with Lorain County officials and directed them to remove the vendor's access to the 911 Center's CJIS systems.

31. On December 8, 2025, Commissioner Jeff Riddell demanded that Plaintiff permit the vendor to access these systems to perform work on behalf of the County.

32. Plaintiff subsequently commenced an audit of Lorain County's 911 CJIS systems to ensure that the vendor's access was restricted as directed.[1]

33. Preliminary findings from this audit revealed that the vendor may have inappropriately accessed sensitive LEADS and/or CJIS information. Plaintiff detailed this potential security violation to Ohio LEADS in a letter dated December 12, 2025, a true copy of which is attached as Exhibit E.

34. LEADS thereafter opened an incident report for the potential violation, and instructed Plaintiff to conduct a further audit of the 911 system. A true copy of that December 17, 2025, communication is attached as Exhibit F.

35. Pursuant to LEADS' instruction, and consistent with Plaintiff's statutory, regulatory, and contractual authorities, Plaintiff requested from Defendant the information necessary to complete the LEADS-requested audit.

36. Defendant has refused to turn over any information which would permit Plaintiff to perform its obligations, in breach of the MOU.

37. Beginning in December 2025, respective counsel for the Parties exchanged a series of letters regarding the authority to operate the 911 Center and Plaintiff's access to 911 Center data.

38. Specifically, on December 29, 2025, counsel for Plaintiff wrote counsel for Defendant requesting access to 911 Center data to perform an audit in fulfillment of Plaintiff's rights and obligations under the MOU and at law. A true copy of the December 29, 2025, letter is attached as Exhibit G.

---

[1] As the vendor and its principal are the subject of an ongoing criminal investigation, their identities have been redacted from the exhibits hereto, and shall not be identified by name in this pleading.

29461-301\3155184.docx

7

39.     Counsel for Defendant responded on December 30, 2025, rejecting Plaintiff's request entirely, seemingly (in addition to other assertions) because "the Sheriff has not articulated what 'felony-level offenses' it believes [REDACTED] have committed, and the County Prosecutor's Office has not charged them." A true copy of the December 30, 2025, letter is attached as Exhibit H.

40.     Counsel for Plaintiff again reached out on January 5, 2026, noting that Defendant's reliance on the investigation into the County's vendor is an inappropriate basis to withhold access, and once more requested access to the necessary 911 Center data to perform the audit, as was Plaintiff's right under the MOU. A true copy of the January 5, 2026 letter is attached as Exhibit I.

41.     Defendant remained obstinate in a January 12, 2026 letter, wherein Defendant again rejected Plaintiff's request for data access, premised on the basis that Plaintiff failed to divulge information regarding the ongoing investigation into the County's former vendor:

> your reply on January 5th...fails to address any of the issues raised by my letter, including (a) why Sheriff Hall initiated his "criminal investigation" of [REDACTED] and what "felony-level offenses" the Sheriff accuses [REDACTED] of, (b) why his "investigation" necessitated the immediate removal of [REDACTED] from the Tyler New World system and the 9-1-1 Center

A true copy of the January 12, 2026 letter is attached as Exhibit J.

42.     By letter dated January 21, 2026, Plaintiff reiterated his request for access to the 911 Center data, this time specifically identifying certain data at issue in an attempt to reach some middle ground with Defendant, and identified individuals it sought to interview as part of the audit process. Plaintiff requested that Defendant provide a response within seven days regarding the Defendant's willingness to comply. A true copy of the January 21, 2026 letter is attached as Exhibit K.

29461-301\3155184.docx                                    8

43.     Defendant failed to respond to the January 21, 2026 letter within seven days.

44.     By letter dated January 30, 2026, Plaintiff followed up to confirm whether Defendant intended to comply.  A true copy of the January 30, 2026 letter is attached as Exhibit L.

45.     Defendant responded on February 2, 2026, once more insisting that it would not comply because of Plaintiff's non-disclosure of information regarding an ongoing criminal investigation: "I've requested that the Sheriff explain what crimes have been committed, and the Sheriff has never responded.  How can the Board work 'collaboratively' with the Sheriff when he cannot even articulate why he is proposing this 'audit' in the first place?"  A true copy of the February 2, 2026 letter is attached as Exhibit M.

46.     In sum, Plaintiff has made every reasonable effort to obtain Defendant's voluntary collaboration and cooperation, but Defendant has entrenched itself in refusal, premised predominantly on Plaintiff's ongoing investigation into the former vendor.

47.     Defendant is not entitled to the disclosure of information regarding an ongoing investigation, and cannot reasonably rely on Plaintiff's refusal to make that disclosure as the basis to refuse Plaintiff access to the 911 System to conduct the necessary audit to ensure LEADS and CJIS compliance.

48.     By letter dated February 12, 2026, LEADS contacted Kurt Scholl, as Director of the Lorain County 911 Center, advising that the 911 Center was in breach of its Management Control Agreement with Plaintiff regarding "management control and access control responsibilities," *i.e.*, the failure to provide Plaintiff with full access to the necessary information

to perform the prescribed audit.[2] A true copy of that February 12, 2026 letter is attached as Exhibit N.

49.     Defendant's refusal to provide access to Plaintiff amounts to a breach of the MOU and the Management Control Agreement, interferes with Plaintiff's duty as the chief law-enforcement officer for Lorain County, and jeopardizes the health and safety of Lorain County residents.

## COUNT I
### (Declaratory Judgment – MOU)

50.     Plaintiff restates and incorporates the assertions contained in the above paragraphs as if fully rewritten herein.

51.     A real controversy exists regarding Plaintiff's rights and Defendant's obligations under the MOU.

52.     Plaintiff contends that he is entitled to full access to 911 Center data to perform an audit to ensure LEADS and CJIS compliance, and that he is within the Sheriff's rights under the MOU to "determine compliance with the law and determine which personnel shall have access to [LEADS] information" and manage the same. *See* Exhibit A.

53.     Defendant is of the apparent belief that it has no obligation to provide such access to Plaintiff, and/or that it is permitted to withhold access on the basis of Plaintiff's refusal to share information regarding an ongoing criminal investigation.

54.     Plaintiff has acted consistent with his rights under the MOU.

---

[2] The Lorain County 911 Center's time to respond to LEADS has not yet expired.

55.     The controversy between the Parties is justiciable in character and it is the obligation of the Court to determine whether Plaintiff's conduct is permitted, and whether Defendant's conduct is not permitted, by the MOU.

56.     A speedy determination of this issue is imperative and necessary to the preservation of rights of the Parties and non-parties, including all citizens of Lorain County. Plaintiff is obligated by law and by contract to manage access to LEADS and compliance with CJIS restrictions. Defendant's obstinacy in refusing to provide access to which Plaintiff is plainly entitled, has no legitimate or rational basis.

57.     Plaintiff is entitled to a declaratory judgment that Plaintiff is entitled to the information that it seeks under the MOU, and that Defendant has no right or power to thwart Plaintiff's requested access and information.

## COUNT II
### (Breach of Contract – MOU)

58.     Plaintiff hereby restates and incorporates the above allegations as if fully rewritten at length herein.

59.     The Parties entered into a contract, the MOU, under which each Party agreed to perform for the merger and operation of the 911 Center for Lorain County. *See* Exhibit A.

60.     Pursuant to the MOU, Plaintiff maintained the right, duty, and obligation to manage the 911 Center with respect to LEADS compliance.

61.     Pursuant to Plaintiff's right, duty, and obligation to manage the 911 Center with respect to LEADS compliance, Plaintiff sought to undertake an audit of the 911 Center in the wake of potential unauthorized access by a vendor.

62.     Defendant has refused to provide Plaintiff with access to the necessary 911 Center data.

63.     Defendant's refusal to provide the necessary information to Plaintiff is a failure to comply with the collaborative mandate of the MOU, and amounts to a material breach of the MOU.

64.     Plaintiff has fully performed under the MOU; Defendant has not.

65.     As a direct, proximate, and foreseeable result, Defendant's refusal has harmed Plaintiff by inhibiting his ability to operate as the chief law enforcement officer for Lorain County.

66.     The only remedy that can make Plaintiff whole is Defendant's compliance with the MOU and the provision to Plaintiff of access to the necessary 911 Center data.

## COUNT III
### (Declaratory Judgment – Management Control Agreement)

67.     Plaintiff restates and incorporates the assertions contained in the above paragraphs as if fully rewritten herein.

68.     A real controversy exists regarding Plaintiff's rights and Defendant's obligations under the Management Control Agreement.

69.     Plaintiff contends that he is entitled to full access to 911 Center data to perform the audit to ensure the 911 Center's LEADS and CJIS compliance, and is within the reserved rights under the Management Control Agreement: "the Lorain County Sheriff's Office shall have the authority, via managed control, to set, maintain, and enforce:...(2) Standards for the selection, supervision, and termination of personnel access (logical and/or physical) to Criminal Justice Information (CJI)...[and] (4) Restriction of unauthorized personnel from access (logical and/or physical) or use of equipment accessing the State Network." *See* Exhibits C-1 and C-2.

70. Defendant is of the apparent belief that it has no obligation to provide such access to Plaintiff, and/or that it is permitted to withhold access on the basis of Plaintiff's refusal to share information regarding an ongoing criminal investigation.

71. Plaintiff has acted consistent with his rights under the Management Control Agreement.

72. The controversy between the Parties is justiciable in character and it is the obligation of the Court to determine whether Plaintiff's conduct is permitted, and whether Defendant's conduct is not permitted, by the Management Control Agreement.

73. A speedy determination of this issue is imperative and necessary to the preservation of rights of the Parties and non-parties, including all citizens of Lorain County. Plaintiff is obligated by law and by contract to manage access to LEADS and compliance with CJIS restrictions. Defendant's obstinacy in refusing to provide access to which Plaintiff is plainly entitled, has no legitimate or rational basis.

74. Plaintiff is entitled to a declaratory judgment that Plaintiff is entitled to the information that it seeks under the Management Control Agreement, and that Defendant has no right or power to thwart Plaintiff's requested access and/or to withhold the requested information.

## COUNT IV
### (Breach of Contract – Management Control Agreement)

75. Plaintiff hereby restates and incorporates the above allegations as if fully rewritten at length herein.

76. Plaintiff is a Criminal Justice Agency ("CJA"), whereas Defendant and the 911 Center are each a non-Criminal Justice Agency ("NCJA").

77. Access to the CJIS is vested exclusively in CJA's and Defendant, a NCJA, can only access CJIS through partnership with Plaintiff, a CJA.

29461-301\3155184.docx                                   13

78.     The Parties entered into the Management Control Agreement, whereby the Parties agreed that Plaintiff would have the full management authority over various aspects of its operations, including:

> Standards for the selection, supervision, and termination of personnel access (logical and/or physical) to Criminal Justice Information (CJI)
>
> …
>
> Restriction of unauthorized personnel from access (logical and/or physical) or use of equipment accessing the State Network. Compliance with all rules and regulations of the Lorain County Sheriff's Office Policies and CJIS Security Policy in the operation of all information received.

*See* Exhibits C-1 and C-2 (paragraph numbers omitted).

79.     Pursuant to the Management Control Agreement, Plaintiff has the right, duty, and obligation to manage the 911 Center with respect to access to the CJIS.

80.     Pursuant to Plaintiff's right, duty, and obligation to manage the 911 Center with respect to access to the CJIS, Plaintiff sought to undertake an audit of the 911 Center in the wake of potential unauthorized access by a vendor.

81.     Defendant has refused to provide Plaintiff with access to the necessary 911 Center data to perform the audit of vendor's access to the CJIS.

82.     Defendant's refusal to provide the necessary information to Plaintiff is an attempt to usurp Plaintiff's exclusive management of certain 911 systems, and amounts to a material breach of the Management Control Agreement.

83.     Plaintiff has fully performed under the Management Control Agreement; Defendant has not.

84.     As a direct, proximate, and foreseeable result, Defendant's refusal has harmed Plaintiff by inhibiting his ability to operate as the chief law enforcement officer for Lorain County.

85.     The only remedy that can make Plaintiff whole is Defendant's compliance with the Management Control Agreement and the provision of access to the necessary 911 Center data.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. On Count I, a declaration that Plaintiff is entitled to unfettered access to the 911 Center's data to perform the audit thereof, and otherwise fulfill his rights, duties, and obligations under the MOU;

b. On Count II, an award of specific performance, with an order from this Court, compelling Defendant to comply with all terms of the MOU, and to provide the following information (or access to such information) directly to Plaintiff:

    i.      Standard Operating Guidelines / Standard Operating Procedures for Lorain County 9-1-1;

    ii.     Access Control Logs for physical access to Lorain County 9-1-1 ingress/egress for the under-investigation vendor and its principal from January 1, 2025, through December 31, 2025;

    iii.    Access Control System roster for all persons having ingress/egress rights to Lorain County 9-1-1 from January 1, 2025 through December 31, 2025;

    iv.     Access Control Policy for Lorain County 9-1-1 On-Boarding and Off-Boarding policies for employees of Lorain County 9-1-1;

    v.      Visitor Logs of Lorain County 9-1-1 from January 1, 2025 through December 31, 2025;

    vi.     Approved vendor list of entities that do business with Lorain County 9-1-1 that have un-escorted privileges;

    vii.    Approved vendor CJIS training documentation and background investigation documentation as required per the CJIS security policy;

    viii.   Background investigations files of each person employed by Lorain County 9-1-1 from January 1, 2025 through December 31, 2025;

    ix.     Position descriptions of each employment and management position with Lorain County 9-1-1;

    x.      Organizational chart of Lorain County 9-1-1;

    xi.     The written plan to reorganize the departments of Lorain County 9-1-1 as required pursuant to Article III, Section (A)(1) of the MOU;

xii. All current collective bargaining agreements for represented employees;

xiii. All employment contracts for non-bargaining unit employees;

xiv. All contracts between Lorain County 9-1-1 and all current vendors;

xv. All communications and training program documentation for current employees and nonemployees trained from January 1, 2024 through the present;

xvi. All personnel files for current employees and former employees hired from January 1, 2024 through the present;

xvii. The names of all software used by Lorain County 9-1-1 and, if any of the software is licensed, provide copies of the license and service agreements for the licensed software;

xviii. The names, makes, and models of all hardware used by Lorain County 9-1-1 and, if any of the hardware is licensed, provide copies of the license and service agreements for the licensed hardware;

xix. List the different levels of access for network domain controller accounts, and identify the types of network access accounts that have each level;

xx. List all user accounts on the network from January 1, 2024 through the present, and show what level of access each user has, including service accounts;

xxi. List the different access levels for Tyler / New World accounts and identify what types of accounts have each level;

xxii. List all users in the Tyler / New World system from January 1, 2024 through the present, and show what access each user has;

xxiii. Provide a diagram showing how the Lorain County 9-1-1 network is set up, including the hardware make and model and the software used;

xxiv. Provide the policy that explains how user accounts are set up, how passwords are handled, and how access is taken away;

xxv. Provide information on how Lorain County 9-1-1 tracks system activity, reviews those records, and reports access-related incidents;

xxvi. Lorain County 9-1-1 vendor disciplinary procedures and documented discipline;

xxvii. Lorain County 9-1-1 incident response policy and all reports of CJIS security incidents from January 1, 2024 through the present; and

xxviii. Lorain County 9-1-1 video management policy, including video camera names connected to the video management system, microphones connected to the video management system and all recorded video (or access thereto) for the retention period defined by the policy;

and to make the following individuals available for interviews during their regularly scheduled work hours:

xxiv. Jeff Armbruster – Lorain County Administrator

xxv.   Karen Perkins – Lorain County Deputy Administrator

xxvi.   Todd Sharkey – Lorain County Information Technology Director

xxvii.   Russell Hines – Information Technology Specialist

xxviii.   Kurt Scholl – Lorain County 9-1-1 Director

xxix.   Michael Davis – Lorain County 9-1-1 Assistant Director

xxx.   Rebecca Pearson – Supervisor

xxxi.   Sarah Bursley – Supervisor

xxxii.   Danielle Larisch – Supervisor

xxxiii.   Timmy Midkiff – Supervisor

xxxiv.   Jason Smith – Supervisor

xxxv.   Kaylee McCoy – Supervisor

xxxvi.   All current dispatch personnel

c.  On Count III, a declaration that Plaintiff is entitled to unfettered access to the 911 Center's data to perform the audit thereof, and otherwise fulfill his rights, duties, and obligations under the Management Control Agreement;

d.  On Count IV, an award of specific performance, with an order from this Court, compelling Defendant to comply with all terms of the Management Control Agreement, and to provide the information (or access to such information) directly to Plaintiff, and to make individuals available for interviews during their regularly schedule work hours, as identified in paragraph b. above;

e.  All costs and fees associated with this action being awarded to Plaintiff; and

f.  Any and all other further relief that this Court deems equitable, and just.

Respectfully submitted,

Richard D. Panza (No. 0011487)
E-mail RPanza@WickensLaw.com
Thomas R. Theado (No. 0013937)
E-mail TTheado@WickensLaw.com
Michael R. Nakon (No. 0097003)
E-mail MRNakon@WickensLaw.com
Docket E-mail Docket@WickensLaw.com
WICKENS HERZER PANZA
35765 Chester Road
Avon, OH 44011-1262
(440) 695-8000 (Main)
(440) 695-8098 (Fax)

ATTORNEYS FOR PLAINTIFF SHERIFF OF LORAIN COUNTY

29461-301\3155184.docx

17

**EXHIBIT A**

## MEMORANDUM OF UNDERSTANDING
## DISPATCH OPERATIONS

This Memorandum of Understanding (MOU) entered into by and between the Board of Commissioners of Lorain County, Ohio (Board) and the Phil R. Stammitti, in his capacity as the Sheriff of Lorain County (Sheriff) at Elyria, Ohio on the date both parties have affixed their signatures below.

Preamble

WHEREAS, Sheriff as part of his duties operates the Lorain County Sheriff's Office Communication Center at the Lorain County Jail located at 9896 Murray Ridge Road, Elyria, Ohio; and

Whereas, said Communication Center provides dispatch services as part of the law enforcement function of the office of the Sheriff and the Sheriff employs deputies to operate the Communication Center; and further

WHEREAS, the Board operates the Lorain County 911 Center at 322 North Gateway Boulevard, Elyria, Ohio; and

Whereas, the Board provides dispatch services  for emergency services and employs personnel to operate the 911 Center; and

WHEREAS, in order to operate both dispatch centers in a more economically efficient manner, it is the desire of the Board and Sheriff to merge the dispatch services provided at the Sheriff's Communication Center with the 911 Center.

THEREFORE, IN CONSIDERATION OF the mutual promises and covenants herein contained and other good and valuable consideration the Board and Sheriff agree to collaborate in the merging of dispatch services provided by each party so as to achieve a single dispatching unit to be located at the 911 Center. The collaborative effort shall consist of the following steps:

### I.    Effective date of merger

A.    This MOU will take effect upon the date indicated below at which both parties have affixed their respective signatures.

B.    It will be the goal of the parties to effectuate consolidation of dispatch services at the earliest possible date, preferably the Fall or Winter of 2011. The parties as soon as practicable will agree upon a "switch over" date whereupon mirror dispatching will commence at the 911 Center.

C.    This MOU will continue from year to year unless terminated by mutual written

agreement of both parties.

D.     The parties acknowledge that the Board may merge dispatch services of other entities with operations at the 911 Center. Nothing in this MOU shall be deemed to preclude the Board from reaching a separate agreement with other entities for the operation of dispatch services at the 911 Center. Such an agreement may be made through separate agreement between the Board and entities, or may be done through amendment of this MOU. Any separate agreement made by the Board would be   completely   independent of this MOU and not subject to any of the terms and conditions of this MOU unless expressly provided therein.

## II.   Equipment

A.     The parties will collaborate through the use of in-house resources or with the assistance of consultants to identify and describe equipment that will   need to be procured or upgraded to conduct law enforcement dispatching operation as the 911 Center.

B.     The parties will collaborate through the use of in-house resources or with the assistance of consultants to evaluate the 911 Center and identify its present suitability for law enforcement dispatching and identify recommendations for present needs and projected expansion.

C.     The parties will collaborate through the use of in-house resources or consultants to preparer specifications and bids or request for proposals to obtain equipment or modify the 911 Center to accommodate the needs identified pursuant to Section II(A) & (B) immediately above.

## III.   Personnel

The parties recognize that the merger of the dispatch operations will require a consolidation of personnel into one unit. The parties further recognize that certain personnel will conduct safety dispatch services, and it will be conducive to the operations of the merged center to have the input and expertise of the Sheriff and his staff provide assistance, consultation and guidance relating to such activity. The parties agree to collaborate through the use of in-house resources or with the assistance of consultants in the implementation of the following procedures:

A     Re-organizational planning

1.     Prepare a written plan to reorganize the departments addressing staff functions and realignment of supervisory positions and responsibility. This will include a co-management transition plan that incorporates

management goals and ending targets.

2.. The Sheriff and Board shall prepare Standard of Operations Procedures and other work and dispatching procedures for the combined operations at the 911 Center. The procedures shall be not become effective until approved by the Board.

3. Prepare a detailed training program including defined milestones for unification of management and work functions. Establish parameters for background checks.

B. Implementation of staffing changes

1. Meet with and coordinate with USWA to implement additional staffing , including establishing seniority "leveling: dates, work transition and addressing existing bargaining agreements.

2.. Prepare layoff notices for dispatchers employed with the Sheriff.

3. Recruit and hire additional supervisory staff.

4. Conduct interviews and letters of employment at 911 for those dispatchers who are laid off from the Sheriff's office

## IV.    Operations

A. Board responsibilities

1. The Board shall be the "Appointing Authority" for all matters pertaining to hiring or terminating employees, and imposing major discipline involving suspension or loss of pay, etc.

2. The Board shall be the Employer and handle all matters regarding contract and union negotiations.

3. The Board shall be fiscal agent and contracting authority.

B. In order to infuse the expertise and experience of the Sheriff, the Sheriff will assist and collaborate in the conduct of day to day operations of the facility which require the qualifications and knowledge of safety force personnel, including the following:

1. Sheriff will create and maintain Standard Operating Procedures (SOPs) which must be approved by the Board along with any major modifications as set forth in Section III(A)(2) above.

2. Imposing minor discipline such as instruction & cautioning, written and reprimands.

3. Sheriff shall conduct background investigations for employees and conduct investigations involving employee behavior issues.

4. The parties shall consult and mutually determine the personnel who shall conduct Pre-Disciplinary Hearings.

5. The parties acknowledge that the Law Enforcement Automated Data System (LEADS), Computerized History Records (CCH) and the Ohio Law Enforcement Gateway System (OHLEG) have restrictions imposed by law which limit persons who may have access to such programs. The Sheriff shall determine compliance with the law and determine which personnel shall have access to that information.

6. The Board anticipates that it will apply to have the 911 Center obtain approval as a LEADS Agency. Upon approval as a LEADS Agency, the authority for allowing access as provided in Article IV(B)(5) shall be the LEADS Agency to be managed by the Lorain County Sheriff.

7. Sheriff shall swear in persons entitled to access to the information described above in Section (B)(5).

8. Sheriff shall issue warrants and related document preparation.

C. The parties acknowledge that until the Sheriff has completed training of the 911 Center personnel, it will be necessary for the Sheriff to maintain more intensive oversight during transition than will be necessary after transition in order to assure adequate law enforcement. Sheriff will oversee daily operations of dispatch services needed for law enforcement purposes until such time as the parties agree that the staff is properly trained. The training oversight transition period will terminate no later than one year from the date of this MOU unless mutually agreed in writing by the parties that it is necessary to extend the training to assure adequate dispatch services. Upon conclusion of the transition period, the Sheriff will continue with the role as set forth in division (B) of this Article.

## V. Implementation goals

The parties recognize that the merger of two formally separate and independent operations will require a high level of cooperation and exchange of ideas and concepts. Realizing that every aspect of such large endeavor can not be anticipated, it is nevertheless the goal of the parties to accomplish this merger in an expeditious manner so as to obtain the economic benefit of cost savings. The parties further recognize the impact that such a consolidation has upon the personnel involved and agree to consider that impact in the implementation of this MOU

## VI.  Amendment and Approval by LEADS

This MOU may be amended by written agreement of both parties. The parties agree that this Agreement shall be contingent upon the approval of LEADS and NCIC.

WHEREFORE, the parties hereto the Board of Commissioners of Lorain County, Ohio and the Lorain County Sheriff do hereunder set forth their signatures on the dates hereafter indicated.

LORAIN COUNTY BOARD
OF COMMISSIONERS:

Ted Kalo                Date:

Lori Kokoski            Date:

Tom Williams            Date        8/24/2011

LORAIN COUNTY SHERIFF;

Phil R. Stammitti       Date:    08-24-11

Approved as to Form:

Gerald A. Innes, Assistant Prosecuting
Attorney

**EXHIBIT B**



# LORAIN COUNTY

## Board of Commissioners
### Ted Kalo    Lori Kokoski    Tom Williams

County Administrator
**James R. Cordes**
440-329-5760

Clerk of Board of Commissioners
**Theresa Upton**
440-329-5103

Animal Control Officer
**J. A. Szlempa Sr.**
440-326-5597

Budget Director
**Lisa Hobart**
440-329-5201

Charles Berry Bridge Supervisor
**Stan Koziura**
440-244-2137

Children & Family Council
**Melissa Stefano**
440-284-4467

Community Development
**Don Romancak**
440-328-2323

E-9-1-1 Director
**Robin Jones**
440-329-5444

Emergency Management &
Homeland Security Director
**Thomas Kelley**
440-329-5117

Golden Acres Administrator
**Jed Dull**
440-938-7210

Human Resources Department
440-329-5150

IT Director
**Ernie Smith**
440-329-5786

Lorain County Transit
440-329-5525

Maintenance Director
**Dennis Shawver**
440-329-5326

Office on Aging Director
**Patricia Littleton**
440-329-4818

Office of Sustainability Director
**Michael Challender**
440-328-2361

Purchasing
440-329-5225

Records Center Supervisor
**Lynn Wallace-Smith**
440-326-4866

Solid Waste Director
**Keith Bailey**
440-329-5442

Special Projects Manager
**Karen Davis**
440-329-5102

Workforce Development
440-284-1830

August 24, 2011

Sheriff Phil Stammitti
9896 Murray Ridge Road
Elyria, Ohio 44035

Dear Sheriff Stammitti:

Enclosed is Resolution No. 11-557, adopted by the Lorain County Board
of Commissioners on August 24, 2011 approving and enter into a MOU with Lorain
County Sheriff for the consolidation of the Sheriff Dispatch to 911 Dispatch.

This is being forwarded for your information and files.

Yours truly,

Theresa L. Upton
Clerk

tlu
Enclosure

Cc:    Susan Lux, Purchasing
       Robin Jones, 911 Director
       County Administrator
       File

226 Middle Ave. Elyria, Ohio 44035-5641  Phone: 440-329-5000 or 440-244-6261  Fax: 440-323-3357
www.loraincounty.us

**EXHIBIT C-1**



## SHERIFF JACK M. HALL

### LORAIN COUNTY SHERIFF'S OFFICE
9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

# Management Control Agreement

Non-Criminal Justice Agency: Lorain County 911 Agency

Criminal Justice Agency: Lorain County Sheriff's Office

PURPOSE: This agreement is intended to establish the minimum required oversite of a Criminal Justice Agency (CJA) over the Non-Criminal Justice Agency (NCJA) that supports criminal justice functions (i.e. hardware, software, network, etc).

SCOPE: Pursuant to the CJIS Security Policy, it is agreed that with respect to administration of that portion of computer systems and network infrastructure interfacing directly or indirectly with the state network (Law Enforcement Automated Data System) for the interstate exchange of criminal history/criminal justice information, the Lorain County Sheriff's Office shall have the authority, via managed control, to set, maintain, and enforce:

(1) Priorities of services provided by the NCJA.

(2) Standards for the selection, supervision, and termination of personnel access (logical and/or physical) to Criminal Justice Information (CJI)

(3) Policy governing operation of justice systems, computers, access devices, circuits, hubs, routers, firewalls, and any other components, including encryption, that comprise and support a telecommunications network and related criminal justice information, insofar as the equipment is used to process or transmit criminal justice systems information guaranteeing the priority, integrity, and availability of service needed by the criminal justice community.

(4) Restriction of unauthorized personnel from access (logical and/or physical) or use of equipment accessing the State Network.

(5) Compliance with all rules and regulations of the Lorain County Sheriff's Office Policies and CJIS Security Policy in the operation of all information received.

- Background Check: To verify identification, a state of residency and national finger-print-based record checks shall be conducted within 30 days.
- Security Awareness Training: Basic security awareness training shall be required within six months of initial assignment and annually thereafter.

Responsibility for management control of the criminal justice function shall remain solely with the Criminal justice agency.

This agreement is in accordance with Section 5.1.1.4 of the CJIS Security Policy which requires that "…management control of the criminal justice function remains solely with the Criminal Justice Agency" and covers the overall supervision of all Lorain County Sheriffs' Office systems, applications, equipment, systems design, programming, and operational procedures associated with the development, implementation, and maintenance of any Lorain County Sheriff's Office system to include TIME System/NCIC Programs that may be subsequently designed and/or implemented within the Lorain County Sheriff's Office.

We, the undersigned parties, agree to the above purpose, principles, and standards of management control and responsibility.

Non-Criminal Justice Agency Head     Criminal Justice Agency Head

(Signature)                           (Signature)

Director                                    Sheriff
(*Title*)                                    (*Title*)

Rob Berner                               Jack M. Hall
(*Typed/Printed Name*)                   (*Typed/Printed Name*)

_01-09-202 5                          _01-09-2025
(*Date*)                                    (*Date*)

**EXHIBIT C-2**



SHERIFF JACK M. HALL

**LORAIN COUNTY SHERIFF'S OFFICE**

9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

# Management Control Agreement

Non-Criminal Justice Agency: <u>Lorain County 911 Agency</u>

Criminal Justice Agency: <u>Lorain County Sheriff's Office</u>

<u>PURPOSE</u>: This agreement is intended to establish the minimum required oversite of a Criminal Justice Agency (CJA) over the Non-Criminal Justice Agency (NCJA) that supports criminal justice functions (i.e. hardware, software, network, etc).

<u>SCOPE</u>: Pursuant to the CJIS Security Policy, it is agreed that with respect to administration of that portion of computer systems and network infrastructure interfacing directly or indirectly with the state network (<u>L</u>aw <u>E</u>nforcement <u>A</u>utomated <u>D</u>ata <u>S</u>ystem) for the interstate exchange of criminal history/criminal justice information, the Lorain County Sheriff's Office shall. have the authority, via managed control, to set, maintain, and enforce:

(1) Priorities of services provided by the NCJA.

(2) Standards for the selection, supervision, and termination of personnel access (logical and/or physical) to Criminal Justice Information (CJI)

(3) Policy governing operation of justice systems, computers, access devices, circuits, hubs, routers, firewalls, and any other components, including encryption, that comprise and support a telecommunications network and related criminal justice information, insofar as the equipment is used to process or transmit criminal justice systems information guaranteeing the priority, integrity, and availability of service needed by the criminal justice community.

(4) Restriction of unauthorized personnel from access (logical and/or physical) or use of equipment accessing the State Network.

(5) Compliance with all rules and regulations of the Lorain County Sheriff's Office Policies and CJIS Security Policy in the operation of all information received.

- Background Check: To verify identification, a state of residency and national fingerprint-based record checks shall be conducted within 30 days.
- Security Awareness Training: Basic security awareness training shall be required within six months of initial assignment and annually thereafter.

Responsibility for management control of the criminal justice function shall remain solely with the Criminal justice agency.

This agreement is in accordance with Section 5.1.1.4 of the CJIS Security Policy which requires that "...management control of the criminal justice function remains solely with the Criminal Justice Agency" and covers the overall supervision of all Lorain County Sheriffs' Office systems, applications, equipment, systems design, programming, and operational procedures associated with the development, implementation, and maintenance of any Lorain County Sheriff's Office system to include TIME System/NCIC Programs that may be subsequently designed and/or implemented within the Lorain County Sheriff's Office.

We., the undersigned parties, agree to the above purpose, principles, and standards of management control and responsibility.

Non-Criminal Justice Agency Head

(Signature)

Director
(Title)

Kurt Scholl
(Typed/Printed Name)

2-20-2026
(Date)

Criminal Justice Agency Head

(Signature)

Sheriff
(Title)

Jack M. Hall
(Typed/Printed Name)

3-3-2026
(Date)

<u>**EXHIBIT D**</u>

**LORAIN COUNTY 9-1-1 REVIEW BOARD**
**LORAIN COUNTY ADMINISTRATION BUILDING**
**226 MIDDLE AVENUE, ELYRIA, OH**
**ROOM 555**

**MEETING MINUTES**
**DATE:  TUESDAY, MARCH 25, 2025**

---

**MEETING CALLED TO ORDER BY COMMISIONER RIDDELL**

**PRESENT:  COMMISSIONER JEFFERY RIDDELL, COMMISSIONER DAVID MOORE, COMMISSIONER MARTIN GALLAGHER, COUNTY ADMINISTRATOR JEFFERY ARMBRUSTER, DIRECTOR ROBERT BERNER, DEPUTY DIRECTOR KURT SCHOLL**

**ABSENT: NONE**

**APPROVAL OF AGENDA:**
The agenda was reviewed and approved.

**APPROVAL OF MINUTES:**
This is the first meeting of this Review Board- no previous minutes to approve.
  - Prior Review Board was comprised of representatives from each fire and law agency that LC 911 covered in Lorain County.

**BUSINESS FROM PREVIOUS MEETING:**
  - None

**NEW BUSINESS**
  - Established chairman of 911 Review Board as Lorain County Commissioners president, Jeff Riddell.

  A.  Ohio 911 Compliance
  - Review of Compliance Requirements
    - Call data volume by month, hour, day, wireless 911 calls, texting, landlines, VOIP lines, how many hang ups, how many open lines, how many abandon calls we called back
    - Review of all training and continuing education of dispatchers as required by the state of Ohio
    - Discussion of letter from state of Ohio; 911 documentation in order; additional data generated via Vesta Analytics for reporting
    - LC 911 has achieved 100% compliance on all items
  - Upcoming Changes for 911 communications
    - Currently, Secondary PSAPs; police and fire that have our system, we transfer 911 calls to them.
    - NextGen and the revised code; when LC 911 center is busy, overflow calls the system will pinpoint callers location and the call will ring into the appropriate agency.
      - Secondary PSAps/Agencies have to meet minimum requirements

- o Staffed with two people 24/7/365; dispatchers have to have prearrival training- including first aid and medical issues; certified equipment
  - Secondaries receiving audits for security- LEADS; CJIS
- Potential increase of agencies moving to LC 911 for dispatch service
- Develop policy regarding use of LC 911 for dispatch service
- Compliance standards for secondary agencies being hosted by LC 911 with their own dispatchers
- LC 911 dispatches for all fire except NR; police: Sherriff, Metroparks, the four villages- Grafton, LaGrange, Kipton, South Amherst, Sheffield Lake on Weekends, NR in the evening

B. Ohio 911 Wireless Funds
- o Government Assistance Funds - $853,217.08
  - Can only be used for specifics items in line with wireless needs: GIS mapping, monitoring systems, fiber lines, cell lines- being used as back up, phone maintenance – runs VESTA system.  Used for technology.
- o Record and report all income and document expenses – currently spent approximately $4,000.00 over revenue.
- o Suggested break out of funds reflecting the two separate levies.  Start preparing for levy renewal – support from community.
- o Next Gen requirements coming in October may increase LC 911 usage by agencies; more support from the communities for LC 911 levies
- o Plan for ramping up to prepare for expansion; Is LC 911 ready for increase and do we have the funds for the personnel
  - Full functionality – 40 dispatchers could serve all agencies in LC for 911
  - Currently at 28 Dispatchers; 12 hour shifts efficient, lower overtime, enticing for employment
- o 911 Revenue - $9.2 mill in, $7 mill in expenses; other funds?
  - Follow up with KC to see if previously borrowed funds advance or transfer from General Fund; if funds were an advance they can be paid back to the General Fund

C. Motorola Radio Install
- o Pods – 4 consoles to a group
- o All equipment on site
- o First install in former Lorain Pod.
  - o Schedule for testing; All channels working; Transmit tones to active departments
  - o Recording devices installed
- o After first pod is successful install, testing, and operational; Move Fire to functional pod
  - o Complete the install, testing, and functionality of Fire pods
- o Final pod slated for radio project; Sheriff / Law Enforcement
- o Upon completion, set up for Next Gen 911 requirements
- o Revisit expansion and changes in October 2024; schedule another meeting
  - o Working out the standards for LC 911 operating in conjunction with secondaries
  - o Current agreement addresses all
- o Operation of radios and transponders
  - o Marcs/Motorola – multi-ban
  - o CCI – not multi-ban

    D. Telecommunicators Week – April 13-19 (NPSTW- National Public Safety Telecommunicators Week)
- LC 911 Theme this year – Music
  - Each day different genre
  - Community agencies bring in food and treats during that week
  - Ice Cream Machine – decorations – prizes for dispatchers

    E. Additional Items
- HVAC Concerns at Burns Road
  - Existing system not suited for server room 24/7/365 cooling needs
  - Backup system necessary
  - Incidents of HVAC shut down – twice since January
    - Dan Gross had Denk Associates on site for review of systems
    - Proposal – Prepare Resolution
      - Funds from LC 911
    - Two part project – looking at main system
      - Additional funds – Building is County Property- question of funds
- Backup Generator – functionality
  - Good- tested weekly; checked monthly

**PUBLIC COMMENT**
- None

**NEXT MEETING**
- Thursday, April 8, 2025 at 2:30pm
- Meeting Room 555



# SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE
9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

December 12, 2025

Ohio LEADS
Ohio Department of Public Safety
1970 West Broad Street
Columbus, Ohio 43223

### Subject: LORAIN COUNTY 911 SECURITY VIOLATION - CJIS

To LEADS Security Team:

I am writing to advise you of a potential CJIS security violation involving the Tyler / New World public safety data system at Lorain County 911.

The Tyler/New World public safety system is the central repository of public safety information for police, fire and EMS dispatching and reporting in Lorain County. Most all Lorain County law enforcement agencies utilize this system for CAD/RMS and storage of their CJIS data. Many fire and EMS agencies utilize the system for dispatch and service call information. The Tyler/New World system has direct connectivity to Ohio LEADS, NCIC and CCH information.

Pursuant to a Memorandum of Understanding – Dispatch Operations (attached Exhibit A), the Lorain County Sheriff shall determine compliance with Ohio law and regulations of the LEADS, CCH and OHLEG systems utilized by personnel of Lorain County 911 (at paragraph 5 of Article IV, Section B). Additionally, the Lorain County Sheriff shall authorize access to the LEADS ORI utilized by Lorain County 911 (at paragraph 6 of Article IV, Section B).

My agency initiated a criminal investigation into a vendor utilized by Lorain County 911 known as ▮▮▮▮▮▮▮▮▮▮▮▮▮ and its principle – ▮▮▮▮▮▮▮▮▮▮ This investigation involves felony-level offenses and the investigation is being conducted by our public corruption unit.

On November 7, 2025 I met with the following individuals to advise them of an on-going investigation into the vendor and advised same to terminate access to CJIS-related information utilized by Lorain County 911: Jeff Riddell – County Commissioner; Jeff Armbruster – County Administrator; Kurt Scholl – 911 Director; Michael Davis – Deputy Director; Todd Sharkey – Director of IT Services; Billie Jo Belcher – Chief of Staff Lorain County Prosecutor / LASO for Lorain County Sheriff; Tony Cillo – Lorain County Prosecutor.

At the November 7th meeting, parties were provided with a directive by me which outlined the necessity to remove ███████████████ and ████████ from having access to CJIS data (attached Exhibit B) at Lorain County 911.

On December 8, 2025 I met with Commissioner Jeff Riddell who demanded that I lift the restriction and allow the vendor to have access to the Tyler/New World database to complete important work they required of her. I advised the vendor may have escorted access in the physical building of 911 and assist with fire/EMS projects that were not affiliated with CJIS, however she could not have access to CJIS data. He requested a letter by sent to County Administrator Jeff Armbruster clarifying my position on the vendor's access to the Lorain County 911 facility (attached Exhibit C). Later that day, Riddell sent me a text message requesting the vendor have access to the Sheriff's Office data as well. The text was ignored.

On December 10, 2025, I requested of our TAC – Russ Scarborough to conduct an audit regarding access of the vendor to the Lorain County 911 System – specifically the CJIS data of the system. The audit revealed the vendor continued to access the Tyler/New World database via "Mobile Law Enforcement" and "Enterprise Mobile" 22 times from November 9 – November 19, 2025 (attached Exhibit D).

Additionally, I was advised the vendor was assigned administrative rights to the Tyler/New World system with System Admin and Super_Auth_All (also known as the God Access with ultimate control of the public safety network) (attached Exhibit E). These rights were in full effect on December 10, 2025.

On December 11, 2025, I received correspondence from Lorain County Administrator Armbruster – dated December 10, 2025 who advised there was no longer a need to comply with my access request for the vendor as the vendor decided to terminate her relationship with the county (attached Exhibit F). A second audit of the vendor was conducted on this date and the vendor's access had remained unchanged.

I replied on Armbruster on December 11th requesting the vendor's access be immediately terminated per my original order dated November 7th and provided a deadline of 23:59 that evening to fulfill same (attached Exhibit G). Armbruster was advised that failure to do so would result in my staff removing the vendor after midnight. The vendor was removed from the system and administrative access terminated at 20:17 on December 11, 2025.

I would like to set a date with your team at your earliest convenience to discuss this issue and compliance regulations.

In your service,

Jack M. Hall
Sheriff

EXHIBIT A

## MEMORANDUM OF UNDERSTANDING
## DISPATCH OPERATIONS

This Memorandum of Understanding (MOU) entered into by and between the Board of Commissioners of Lorain County, Ohio (Board) and the Phil R. Stammitti, in his capacity as the Sheriff of Lorain County (Sheriff) at Elyria, Ohio on the date both parties have affixed their signatures below.

### Preamble

WHEREAS, Sheriff as part of his duties operates the Lorain County Sheriff's Office Communication Center at the Lorain County Jail located at 9896 Murray Ridge Road, Elyria, Ohio; and

Whereas, said Communication Center provides dispatch services as part of the law enforcement function of the office of the Sheriff and the Sheriff employs deputies to operate the Communication Center; and further

WHEREAS, the Board operates the Lorain County 911 Center at 322 North Gateway Boulevard, Elyria, Ohio; and

Whereas, the Board provides dispatch services   for emergency services and employs personnel to operate the 911 Center; and

WHEREAS, in order to operate both dispatch centers in a more economically efficient manner, it is the desire of the Board and Sheriff to merge the dispatch services provided at the Sheriff's Communication Center with the 911 Center.

THEREFORE, IN CONSIDERATION OF the mutual promises and covenants herein contained and other good and valuable consideration the Board and Sheriff agree to collaborate in the merging of dispatch services provided by each party so as to achieve a single dispatching unit to be located at the 911 Center. The collaborative effort shall consist of the following steps:

### I.   Effective date of merger

A.   This MOU will take effect upon the date indicated below at which both parties have affixed their respective signatures.

B.   It will be the goal of the parties to effectuate consolidation of dispatch services at the earliest possible date, preferably the Fall or Winter of 2011. The parties as soon as practicable will agree upon a "switch over" date whereupon mirror dispatching will commence at the 911 Center.

C.   This MOU will continue from year to year unless terminated by mutual written

agreement of both parties.

D.	The parties acknowledge that the Board may merge dispatch services of other entities with operations at the 911 Center. Nothing in this MOU shall be deemed to preclude the Board from reaching a separate agreement with other entities for the operation of dispatch services at the 911 Center. Such an agreement may be made through separate agreement between the Board and entities, or may be done through amendment of this MOU. Any separate agreement made by the Board would be   completely   independent of this MOU and not subject to any of the terms and conditions of this MOU unless expressly provided therein.

## II.	Equipment

A.	The parties will collaborate through the use of in-house resources or with the assistance of consultants to identify and describe equipment that will   need to be procured or upgraded to conduct law enforcement dispatching operation as the 911 Center.

B.	The parties will collaborate through the use of in-house resources or with the assistance of consultants to evaluate the 911 Center and identify its present suitability for law enforcement dispatching and identify recommendations for present needs and projected expansion.

C.	The parties will collaborate through the use of in-house resources or consultants to preparer specifications and bids or request for proposals to obtain equipment or modify the 911 Center to accommodate the needs identified pursuant to Section II(A) & (B) immediately above.

## III.	Personnel

The parties recognize that the merger of the dispatch operations will require a consolidation of personnel into one unit. The parties further recognize that certain personnel will conduct safety dispatch services, and it will be conducive to the operations of the merged center to have the input and expertise of the Sheriff and his staff provide assistance, consultation and guidance relating to such activity. The parties agree to collaborate through the use of in-house resources or with the assistance of consultants in the implementation of the following procedures:

A	Re-organizational planning

1.	Prepare a written plan to reorganize the departments addressing staff functions and realignment of supervisory positions and responsibility. This will include a co-management transition plan that incorporates

management goals and ending targets.

2.. The Sheriff and Board shall prepare Standard of Operations Procedures and other work and dispatching procedures for the combined operations at the 911 Center. The procedures shall be not become effective until approved by the Board.

3. Prepare a detailed training program including defined milestones for unification of management and work functions. Establish parameters for background checks.

B. Implementation of staffing changes

1. Meet with and coordinate with USWA to implement additional staffing , including establishing seniority "leveling: dates, work transition and addressing existing bargaining agreements.

2.. Prepare layoff notices for dispatchers employed with the Sheriff.

3. Recruit and hire additional supervisory staff.

4. Conduct interviews and letters of employment at 911 for those dispatchers who are laid off from the Sheriff's office

## IV.    Operations

A. Board responsibilities

1. The Board shall be the "Appointing Authority" for all matters pertaining to hiring or terminating employees, and imposing major discipline involving suspension or loss of pay, etc.

2. The Board shall be the Employer and handle all matters regarding contract and union negotiations.

3. The Board shall be fiscal agent and contracting authority.

B. In order to infuse the expertise and experience of the Sheriff, the Sheriff will assist and collaborate in the conduct of day to day operations of the facility which require the qualifications and knowledge of safety force personnel, including the following:

1. Sheriff will create and maintain Standard Operating Procedures (SOPs) which must be approved by the Board along with any major modifications as set forth in Section III(A)(2) above.

2. Imposing minor discipline such as instruction & cautioning, written and reprimands.

3. Sheriff shall conduct background investigations for employees and conduct investigations involving employee behavior issues.

4. The parties shall consult and mutually determine the personnel who shall conduct Pre-Disciplinary Hearings.

5. The parties acknowledge that the Law Enforcement Automated Data System (LEADS), Computerized History Records (CCH) and the Ohio Law Enforcement Gateway System (OHLEG) have restrictions imposed by law which limit persons who may have access to such programs.    The Sheriff shall determine compliance with the law and determine which personnel shall have access to that information.

6. The Board anticipates that it will apply to have the 911 Center obtain approval as a LEADS Agency. Upon approval as a LEADS Agency, the authority for allowing access as provided in Article IV(B)(5) shall be the LEADS Agency to be managed by the Lorain County Sheriff.

7. Sheriff shall swear in persons entitled to access to the information described above in Section (B)(5).

8. Sheriff shall issue warrants and related document preparation.

C. The parties acknowledge that until the Sheriff has completed training of the 911 Center personnel, it will be necessary for the Sheriff to maintain more intensive oversight during transition than will be necessary after transition in order to assure adequate law enforcement. Sheriff will oversee daily operations of dispatch services needed for law enforcement purposes until such time as the parties agree that the staff is properly trained. The training oversight transition period will terminate no later than one year from the date of this MOU unless mutually agreed in writing by the parties that it is necessary to extend the training to assure adequate dispatch services. Upon conclusion of the transition period, the Sheriff will continue with the role as set forth in division (B) of this Article.

## V.  Implementation goals

The parties recognize that the merger of two formally separate and independent operations will require a high level of cooperation and exchange of ideas and concepts. Realizing that every aspect of such large endeavor can not be anticipated, it is nevertheless the goal of the parties to accomplish this merger in an expeditious manner so as to obtain the economic benefit of cost savings. The parties further recognize the impact that such a consolidation has upon the personnel involved and agree to consider that impact in the implementation of this MOU

## VI.   Amendment and Approval by LEADS

This MOU may be amended by written agreement of both parties. The parties agree that this Agreement shall be contingent upon the approval of LEADS and NCIC.

WHEREFORE, the parties hereto the Board of Commissioners of Lorain County, Ohio and the Lorain County Sheriff do hereunder set forth their signatures on the dates hereafter indicated.

LORAIN COUNTY BOARD
OF COMMISSIONERS:

Ted Kalo            Date:

Lori Kokoski        Date:

Tom Williams        Date        8/24/2011

LORAIN COUNTY SHERIFF;

Phil R. Stammitti    Date:  08-24-11

Approved as to Form:

Gerald A. Innes, Assistant Prosecuting Attorney



# SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE
9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

EXHIBIT B

November 7, 2025

Lorain County Board of County Commissioners
Lorain County 911
226 Middle Avenue, 4th Floor
Elyria, Ohio 44035

**Subject: Formal Request for Removal of Consultant** ▆▆▆▆▆▆▆ **from Lorain County 911 and CJI Access**

To the Lorain County Board of Commissioners,

I am writing to formally advise the immediate removal of ▆▆▆▆▆▆▆ from any role, access, or involvement with Lorain County 911 (as outlined below), which is jointly managed by the Lorain County Sheriff's Office and is subject to strict CJIS compliance requirements for which the Sheriff is responsible.

Given my responsibility for law enforcement operations and CJIS compliance per the terms of the MOU, I respectfully advise that ▆▆▆▆▆▆▆ shall be removed from all duties related to the 911 agency as related to LEADS, NCIC and CJIS effective immediately and that confirmation of this action be provided in writing no later than close of business on Monday – November 10, 2025.

Thank you for your prompt attention to this matter. Please feel free to contact me directly should you require any further information or clarification.

Thank you,

Jack M. Hall
Lorain County Sheriff



# SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE
9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

EXHIBIT C

December 8, 2025

Lorain County Board of County Commissioners
Lorain County 911
226 Middle Avenue, 4th Floor
Elyria, Ohio 44035

**Subject: Formal Request for Removal of Consultant ███████████ from Lorain County 911 and CJI Access**

To the Lorain County Board of Commissioners,

Please accept this correspondence as an update to my original memorandum dated November 7, 2025 entitled with the same subject line.

███████████ and ███████████ would certainly have escorted access to the Lorain County 911 facilities (physical plant). Additionally, I cannot restrict the company nor ███████████ from non-CJIS data or applications such as fire and EMS data tables, stored data or applications – nor the network access to such.

Please feel free to contact me if you have any questions regarding this update.

Thank you,

Jack M. Hall
Lorain County Sheriff

Security Management

EXHIBIT D

| Yes | 11/19/2025 01:50:41 | 172.30.169.133 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
|-----|---------------------|----------------|-------------------------|----------------|
| Yes | 11/18/2025 13:50:39 | 172.30.165.97 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/18/2025 01:50:38 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/17/2025 13:50:36 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/17/2025 01:50:35 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/16/2025 13:50:33 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/16/2025 01:50:32 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/15/2025 13:54:13 | 172.30.164.29 | ip-172-30-164-29.us-gov-wes... | Enterprise Mo |
| Yes | 11/15/2025 13:50:30 | 172.30.164.29 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/15/2025 01:50:28 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/14/2025 13:50:26 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/14/2025 01:50:25 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/13/2025 13:50:23 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/13/2025 01:50:22 | 172.30.169.11 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/12/2025 13:50:20 | 172.30.169.11 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/12/2025 01:50:19 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/11/2025 13:50:17 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/11/2025 01:50:16 | 172.30.164.187 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/10/2025 13:50:14 | 172.30.164.187 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/10/2025 01:50:13 | 172.30.165.50 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/09/2025 13:50:11 | 172.30.169.122 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/09/2025 01:50:10 | 172.30.164.151 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |



Exhibit E

- ☑ 911 Adm External Agen
- ☑ 911 TAC
- ☑ Administrator 2
- ☐ Alarm Management
- ☐ ALPD Administrative Secretary
- ☑ ALPD Administrator
- ☐ ALPD Chief
- ☐ ALPD Detective
- ☐ ALPD Detective Sergeant
- ☐ ALPD Dispatcher
- ☐ ALPD Dispatcher / Records

- ☑ Auth All
- ☑ Auth All 911

- ☐ Auth All LaGrange
- ☐ Auth All LCSO
- ☑ Auth All Lorain PD
- ☐ Auth All Metro Parks
- ☑ Auth All North Ridgeville PD

- ☐ Investigator
- ☑ LAPD Admin
- ☐ LAPD Det

- ☐ Link Privileges
- ☑ LORAIN COUNTY GLOBAL ACCESS
- ☐ Lorain County Metro Parks

- ☐ LPD Detention Officer Supervisor
- ☑ LPD IT Staff
- ☐ LPD Law Deparment

- ☐ NRPD Supervisors
- ☑ OPD Admin Staff
- ☐ OPD Chief

- ☐ Patrol Supervisor
- ☑ Personnel Admin
- ☐ Police CAD View

- ☑ Super_Auth_All
- ☑ System Admin - CAD
- ☑ System Admin - CMS
- ☑ System Admin - Fire
- ☑ System Admin - LERMS
- ☑ System Administrator



# LORAIN COUNTY COMMISSIONERS

**Marty Gallagher**     **David J Moore**     **Jeff Riddell**

**Jeffry J Armbruster, County Administrator**

Exhibit F

December 10, 2025

Dear Sheriff Hall:

I am responding to your letter to the Board of Commissioners dated December 8, 2025. Thank you for the update to your November 7, 2025, letter; however, your proposed accommodation to ▮▮▮▮ and her company is no longer relevant. ▮▮▮▮ has retained legal counsel regarding its (and ▮▮▮▮) exclusion from Lorain County 911, which ▮▮▮▮ says interferes with ▮▮▮▮ contract with the County. Through counsel, ▮▮▮▮ has threatened to sue the County over what ▮▮▮▮ perceives as a threat of criminal prosecution and unlawful interference with ▮▮▮▮ contract with the County.

This, of course, has created a very real problem for the County because her expertise was an extremely valuable component to implementing and monitoring the County's 911 operations. The County is taking all expedient action to replace ▮▮▮▮ and ▮▮▮▮, but this situation unnecessarily threatens the County's 911 operations and increases the risk to Lorain County residents and first responders, which the County must now resolve. I hope that we can count on you to provide all necessary support to the next IT services provider at 911 as the County performs its duties as the operator and contracting authority for Lorain County 911.

Respectfully submitted,

Jeffry J Armbruster
Lorain County Administrator



# SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE
9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

EXHIBIT 6

December 11, 2025

Lorain County Board of County Commissioners
c/o Jeff Armbruster, Administrator
Lorain County 911
226 Middle Avenue, 4th Floor
Elyria, Ohio 44035

**Subject: December 10, 2025 Correspondence**

To Administrator Armbruster,

I am in receipt of your letter dated December 10, 2025.

Am I correct to understand from your letter that ███████████████ and █████
████████ have terminated their relationship with Lorain County – specifically Lorain County
911 due to your opining that my proposed accommodation for her and her company, "... is no
longer relevant?"

I ask this because after auditing the user credentials of Tyler Technologies on December 10,
2025 – the date of your correspondence, ████████████ is credentialed as an administrator-
level account with "Super Administrator" and "Super_Auth_All" – having full and uninhibited
network control of the Tyler / New World public safety database which includes CJIS-
protected information. After receiving your correspondence on this date (November 11,
2025), I conducted a second audit and found no change in ████████████ credentials.

This is quite disturbing to me as I directed the Board on November 7, 2025 pursuant to my
authorities under the Memorandum of Understanding Dispatch Operations (MOU) and
specific legal authorities as prescribed by the Ohio Revised Code to terminate the Tyler /
New World CJIS access for ███████████████ and ████████████. I learned this
directive was never complied with and ████████████ continued to access CJIS-related
information as a super administrator through her network login audit trail until November 19,
2025.

████████████ should have been removed from CJIS access on November 7, 2025. As you
indicate she is no longer affiliated with Lorain County, I am requesting proof of her removal
from the Tyler / New World public safety database system by 23:59 hours this date of
December 11, 2025. If de-activation / deletion of her account is not performed by the Board
as directed above, I will direct my staff to remove her credentials.

BUSINESS OFFICE: 440-329-3709  |  JAIL: 440-329-3770  |  INFORMATION: www.loraincountysheriff.com

Page 2

As I interpret this as a CJIS security violation, I will report this circumstance to Ohio LEADS by the end of business day tomorrow (December 12, 2025). I will forward you and the Board a copy of my complaint and findings.

Please be advised that prior to the assignment of new personnel who will have CJIS access to the facilities and records of Lorain County 911, such persons are subject to a background investigation by my office pursuant to the MOU. I would recommend such persons be forwarded to my office for a background investigation prior to employment, however such investigation must be done prior to such person(s) having access to CJIS data.

You can certainly count on my office to provide all necessary support to the next IT services provider at 911 as it is my statutory and contractual duty to do so which I take this responsibility seriously for the safety of the residents of Lorain County.

In your service,

Jack M. Hall
Sheriff

**EXHIBIT F**

**From:** KLocke@dps.ohio.gov <KLocke@dps.ohio.gov>
**Sent:** Wednesday, December 17, 2025 1:15:12 PM
**To:** Sheriff Jack Hall <jhall@loraincountysheriff.com>; Billie Jo Belcher
<BillieJo.Belcher@lcprosecutor.org>; JHansford@dps.ohio.gov <JHansford@dps.ohio.gov>;
kjoseph@dps.ohio.gov <kjoseph@dps.ohio.gov>; VDowdy@dps.ohio.gov <VDowdy@dps.ohio.gov>
**Cc:** Russell Scarbrough <rscarbrough@loraincountysheriff.com>
**Subject:** RE: [EXTERNAL]RE: LEADS Access Report

Sheriff Hill,

Thank you for notifying LEADS of the potential security violation.  LEADS has opened an
incident report, which will be updated as your office's investigation progresses.

Based on the information provided, LEADS understands that vendor access to CJIS-related
systems was continued despite a documented directive to revoke such access.  This included the
retention of elevated administrative privileges, which raises significant concerns.

LEADS Security reviewed the documentation and correspondence related to this incident.  This
matter should be evaluated against the following applicable CJIS Security Policy v6.0
requirements.

- Identification and Authentication (IA): Account management, credential control, and access
  revocation

- Access Control (AC): Authorization, role-based access, least privilege, and privileged account
  management

- Audit and Accountability (AU): Audit logging, review, and accountability for system access

- Personnel Security (PS): Vendor access controls, background screening, and enforcement of
  disciplinary procedures

- Incident Response (IR): Identification, documentation, and reporting of suspected CJIS security
  incidents

The review should include evaluation of authorization approvals, access justification, audit trail
records, account and privilege management practices.

I have included Victoria Dowdy Deputy CSO on this communication.

Thank you for your continued partnership and commitment to CJIS security compliance.

Kevin J. Locke
Information Security Officer (ISO)
LEADS Security Supervisor
Ohio State Highway Patrol
1970 West Broad Street
Columbus, Ohio 43223
(614) 466-3055 Help Desk
(614) 387-6156 Direct
(614) 644-2459 FAX
LEADSSecurity@dps.ohio.gov

**EXHIBIT G**


**WICKENS HERZER PANZA**

**Richard D. Panza**
Attorney at Law
p: (440) 695-8055
RPanza@WickensLaw.com

December 29, 2025

**VIA EMAIL AND REGULAR U.S. MAIL**
rgembala@gmpfirm.com

Ryan M. Gembala, Esq.
Gembala McLaughlin & Pecora
5455 Detroit Road
Sheffield Village, Ohio 44054

> RE:  Lorain County's 9-1-1 System and Countywide Public Safety Communications System: The
> Sheriff's Duties and Obligations, and Consequent Audit and Review of the System.

Dear Attorney Gembala:

The Lorain County Board of Commissioners (the "Board") has authorized my firm "to provide representation to the Lorain County Sheriff in association with issues involving emergency 9-1-1 operations and regional emergency communications matters." Board Resolution No. 25-875 (Dec. 19, 2025) (copy enclosed). The Lorain County Court of Common Pleas, Judge Freeman presiding, has ordered that representation. *In re: Application*, Lorain C.P. No. 25 MISC (Dec. 22, 2025) (copy enclosed). My colleague, Thomas Theado, and I are providing that representation for our firm. The Board has retained your firm to represent it "regarding certain dispatch services." Board Resolution No. 25-797 (Nov. 21, 2025) (copy enclosed). We write you in order to promptly encourage a dialogue between our clients regarding the responsibility of operating Lorain County's countywide Public Safety Communications System ("PSCS"), concerning the August 24, 2011, Memorandum of Understanding - Dispatch Operations ("MOU") that the Board approved as Resolution No. 11-557 (copy enclosed), and regarding the powers, prerogatives, obligations, and duties of the Lorain County Sheriff in operating Lorain County's 9-1-1 system. If you do not represent the Board regarding those matters, please inform me immediately.

The MOU is in full force and effect. Certainly the MOU does not impinge on or otherwise affect the requirement that the Sheriff operate Lorain County's countywide PSCS. The truism of that statement is, in the first instance, demonstrated by the pertinent statutes themselves. Ohio Revised Code Section 307.63(A), in pertinent part, defines a countywide PSCS as "a system of communications facilities, equipment, and services that helps to provide immediate field exchange of police, fire, and emergency medical services information between the county and participating states, political subdivisions, and other public entities." Ohio Revised Code, at Section 128.01(A), defines a 9-1-1 system as merely "a system through which individuals can request emergency service using the access number 9-1-1." The statutory schema thus shows that a 9-1-1 system is an agent by which a countywide PSCS is actuated to provide the services of such a system, *i.e.*, the "immediate field exchange of police, fire, and emergency medical services information

29461-301\3127907.docx

Ryan M. Gembala, Esq.
Gembala McLaughlin & Pecora
December 29, 2025
Page 2

between the county and participating political subdivisions." 1995 Ohio AG LEXIS 5, *7, 1995 Ohio Op. Atty Gen. 13, 1995 Ohio Op. Atty Gen. No. 4 at 2-16.

In addition to the express terms of the statutes, various Opinions of the Ohio Attorney General demonstrate that "a countywide 9-1-1 system is not a countywide public safety communications system." 1998 Ohio AG LEXIS 32 *6, 1998 Ohio Op. Atty Gen. No. 32.

> [C]ountywide 9-1-1 systems and countywide public safety communications systems serve different purposes. A countywide 9-1-1 system is used by the citizens of the county to contact and obtain the services of an emergency service provider, while a countywide public safety communications system is used to provide immediate field exchange of police, fire, and emergency medical services information between the county and other political subdivisions.

1998 Ohio AG LEXIS 32, *7, 1998 Ohio Op. Atty Gen. No. 32. Indeed, "countywide public safety communications systems and countywide 9-1-1 systems serve distinctly different purposes." 1999 Ohio AG LEXIS 15, *7, 1999 Ohio Op. Atty Gen. No. 17. "The operation of a countywide 9-1-1 system thus is not dependent upon the simultaneous operation of a countywide public safety communications system." *Id.*

Finally, apparently the only case decision on the matter agrees in the Sheriff's position that a countywide PSCS "consists of the facilities, equipment, and services which assist in the immediate exchange of information between various public officials pertaining to police, fire, and emergency medical matters," while "a 9-1-1 system is the mechanism by which an individual citizen of a county can request emergency services." *State ex rel. Simmons v. Geauga Cty. Dept. of Emergency Servs.*, 722 N.E.2d 1063 (11th Dist. 1998).

It is also patently clear that Sheriff Hall has the sole authority to operate Lorain County's countywide PSCS. Section 307.63(B)(1) of Ohio's Revised Code expressly states (emphasis added) that, "[i]n any county with a population of less than seven hundred fifty thousand [such as Lorain County], *the county sheriff shall operate the countywide public safety communications system* unless, before commencing operation of the system, the sheriff gives written notice to the board of county commissioners that he chooses not to do so." Lorain County's prior Sheriff, Phil Stammitti, in executing the MOU, did not give written notice that he chose not to operate Lorain County's PSCS; as the MOU on its face demonstrates, it concerns only the county's 9-1-1 system, and (as is shown above) that system is most assuredly not the county's countywide PSCS.   The MOU effectuated a merger of the dispatch services provided by the 9-1-1 Center with and into the Sheriff's dispatch responsibilities.

The foregoing well demonstrates that the Sheriff has the sole and singular authority to operate Lorain County's countywide PSCS pursuant to statute and the MOU via the Sheriff's CJIS security policy authorities. The MOU's recognition of the importance of those authorities is evidenced by the fact that the MOU was explicitly made "contingent upon the approval of LEADS and NCIC." It is also patently true that the 9-1-1 System is the PSCS's Public Safety Answering Point (PSAP) and as such the Sheriff has serious, sincere, and substantial obligations to assure the coherence, security, and reliance of its operation. Moreover, the MOU expressly provides and guarantees the Sheriff particular prerogatives, obligations, and duties with respect to

Ryan M. Gembala, Esq.
Gembala McLaughlin & Pecora
December 29, 2025
Page 3

the 9-1-1 System's operation. And all of these concerns and duties find their further support in the mandate of Ohio Revised Code Section 311.07(A) that "[e]ach sheriff shall preserve the public peace."

Simply put, the PSCS is under the direct control of the Sheriff. It is separate and exclusive from the terms or intent of the 2011 MOU. Furthermore, to the extent that the merged dispatch 9-1-1 system encroaches on any of the rights and duties of the Sheriff, pursuant to his responsibilities in the implementation of the PSCS, the Sheriff has the ultimate authority in the resolution of those issues.

Consistent with, and in obedience to, his 9-1-1 obligations, earlier this month the Sheriff had to report, to the Law Enforcement Agencies Data System ("LEADS") with the Ohio Department of Public Safety, a potential Criminal Justice Information Services ("CJIS") security violation involving the public safety data system at Lorain County's 9-1-1 center (copy enclosed). A copy of the LEADS' December 17, 2025 reply, is also enclosed. LEADS has directed that the Sheriff conduct an audit of Lorain County's 9-1-1 System for an evaluation of the System's adherence to each of the five below-listed requirements (and I quote LEADS' enclosed directive):

- Identification and Authentication (IA): Account management, credential control, and access revocation
- Access Control (AC): Authorization, role-based access, least privilege, and privileged account management
- Audit and Accountability (AU): Audit logging, review, and accountability for system access
- Personnel Security (PS): Vendor access controls, background screening, and enforcement of disciplinary procedures
- Incident Response (IR): Identification, documentation, and reporting of suspected CJIS security incidents

LEADS has specified that the Sheriff's "review should include evaluation of authorization approvals, access justification, audit trail records, account and privilege management practices."

In addition to the above-mentioned 9-1-1 security concerns, the Sheriff has received unsolicited reports of particular and specific deficiencies in the County's 9-1-1 System's lack of training, policy enforcement, and supervisory practices that impact the System's operational integrity. And there is the breakdown in Lorain County's 9-1-1 communications that occurred on November 21, 2025. That failure, which caused a delay in critical ambulance service and was implicated in the delaying of at least two fire-department responses, was blamed on a temporary malfunction of Lorain County 9-1-1's automated emergency dispatching but has not yet received a full investigative report.

The Sheriff, in the exercise of his 9-1-1 duties and responsibilities, has already commenced the audit necessary to evaluate each of the aforementioned concerns and failures. In order to complete those reviews, the Sheriff will need unfettered and full access to the whole of Lorain County's 9-1-1 System, its infrastructure, policies, procedures, and personnel. While the statutory and decisional law broached above

29461-301\3127907.docx

Ryan M. Gembala, Esq.
Gembala McLaughlin & Pecora
December 29, 2025
Page 4

and the MOU clearly grant the Sherriff such access, we write to request a meeting of our clients – at whatever mutually agreeable time and place we can find – to identify and resolve whatever concerns each may have in the prompt performance of the requisite audit and reviews.  Toward that end, we look forward to hearing from you soon.

Sincerely,

WICKENS HERZER PANZA

*Richard D. Panza*

By:  Richard D. Panza
Attorney at Law

RDP/tsc

cc:     Sheriff Jack M. Hall
        Thomas R. Theado, Esq.

29461-301\3127907.docx



# LORAIN COUNTY COMMISSIONERS

**Marty Gallagher**       **David J Moore**       **Jeff Riddell**

December 22, 2025

Tony Cillo
LC Prosecutor
225 Court Street
Elyria, Ohio 44035

Attn: Leigh Prugh, LC APA

Lorain County Board of Commissioners adopted Res#25-875 on December 19, 2025 Board of Commissioners of Lorain County, Ohio retaining the law firm of Wickens Herzer Panza Co., to serve as outside Legal counsel for the Lorain County Sheriff Pursuant to R.C. 305.14

This is being forwarded for your information and files.

Sincerely,

Theresa L. Upton
Clerk

tlu/Enclosure

cc:      KC Saunders, Finance Director
         File

d.31

RESOLUTION NO. 25-875

In the matter of the Board of Commissioners of )
Lorain County, Ohio retaining the law firm of   )
Wickens Herzer Panza Co., to serve as outside   )
Legal counsel for the Lorain County Sheriff      )          December 19, 2025
Pursuant to R.C. 305.14                          )

       WHEREAS, the Lorain County Board of Commissioners (the "Board") authorizes the hiring and retention of the law firm of Wickens Herzer Panza Co. to provide representation to the Lorain County Sheriff in association with issues involving emergency 9-1-1 operations and regional emergency communications matters; and

       WHEREAS, the Board and the Prosecuting Attorney have determined that the retention of Wickens Herzer Panza Co. on behalf of the Lorain County Sheriff for these purposes is proper;

       NOW THEREFORE BE IT RESOLVED by the Lorain County Board of Commissioners that:

1.  The Board of Commissioners retains the law firm of Wickens Herzer Panza Co. to provide representation to the Lorain County Sheriff in association with issues involving emergency 9-1-1 operations and regional emergency communications matters.
2.  The President of the Board is hereby authorized to execute all documents consistent herewith.
3.  It is found and determined that all formal actions of the Board relating to the adoption of this Resolution were taken in an open meeting, and all deliberations of the Board that resulted in this action were conducted in compliance with all legal requirements.

       Motion by Riddell, seconded by Moore to adopt. Upon roll call the vote taken thereon, resulted as: Ayes: Riddell & Gallagher / Nays: Moore /

Motion carried. _____ (discussion was held on the above)

I, Theresa L. Upton, Clerk to the Lorain County Board of Commissioners do hereby certify that the above Resolution 25-875 is a true copy as it appears in Journal No. 25 on December 19, 2025.

                Theresa L. Upton, Clerk

FILED
LORAIN COUNTY

2025 DEC 22 P 12 50

COURT OF COMMON PLEAS
TOM ORLANDO

## IN THE COURT OF COMMON PLEAS
## LORAIN COUNTY, OHIO

IN RE:                                      )
APPLICATION OF PROSECUTING                  )
ATTORNEY AND BOARD OF                       )
COMMISSIONERS TO AUTHORIZE                  )
BOARD OF COMMISSIONERS TO                   )
EMPLOY LEGAL COUNSEL                        )
PURSUANT TO R.C 305.14(A)                   )

CASE NO. 25 MISC

JUDGE DONNA FREEMAN

**JOURNAL ENTRY,**

This matter came before this Court on a hearing on __12-22-25__ upon the application of the Prosecuting Attorney and the Board of County Commissioners of the County of Lorain, Ohio to retain the legal services of Wickens Herzer Panza Co. to provide legal representation for the Lorain County Sheriff (the "Sheriff") on the matters of emergency 9-1-1 operations and regional emergency communications, under circumstances where the Lorain County Prosecuting Attorney has a conflict of interest.

In providing said legal services, as an independent contractor and in an attorney-client relationship, legal counsel shall not exercise any administrative discretion on behalf of the Sheriff in the formulation of public policy, expenditure of public funds, enforcement of laws, rules and regulations of the State, any county, or cities or of the office of the Sheriff, or the execution of public trusts.

The Court, being fully advised, finds the application of the Prosecutor and the Board of County Commissioners to be well-taken, and that it is in the best interest of the County of Lorain

for said application to be granted, pursuant to R.C. 305.14(A).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that the application of the Board of Commissioners and the Prosecuting Attorney is hereby granted, and that the Board of Commissioners shall employ legal counsel to provide all reasonably necessary legal services in accordance with the scope of work set forth above.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the reasonable fees and expenses shall be through invoice for services rendered within the scope of this Entry.  Invoices shall be itemized by reflecting attributable billable hours.  Payment shall be in accordance with County policies and procedures through submission to the Lorain County Auditor.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the retention of such services may be terminated by seven (7) days' written notice given by the terminating party to the other parties.  Legal counsel will provide all services required by this agreement to the date of termination, and provide cooperation in any transition of legal services.

Under no circumstances will the Board of Commissioners be responsible for any type of penalty payment upon the cancellation of this agreement.  Legal counsel will, however, be paid for all services rendered to the date of termination.

_____  \_\_\_\_12-22-25\_\_\_\_
JUDGE                                      DATE



# LORAIN COUNTY COMMISSIONERS

**Marty Gallagher**     **David J Moore**     **Jeff Riddell**

November 25, 2025

Tony Cillo
LC Prosecutor
225 Court Street
Elyria, Ohio 44035

Attn: Leigh Prugh, LC APA

Lorain County Board of Commissioners adopted Res#25-797 on November 21, 2025 Lorain County Board of Commissioners Retaining the law firm of Gembala, McLaughlin & Pecora Co., LPA

This is being forwarded for your information and files.

Sincerely,

Theresa L. Upton
Clerk

tlu/Enclosure

cc:     Commissioners
        KC Saunders, Finance Director
        File

RESOLUTION NO. 25-797

In the matter of the Lorain County Board of Commissioners)
Retaining the law firm of Gembala, McLaughlin & Pecora )
Co., LPA                                                                    )          November 21, 2025

WHEREAS, the Lorain County Prosecutors Office has identified a conflict of interest regarding potential dispute between the Board of Commissioners and the Lorain County Sheriff regarding certain dispatch services; and

WHEREAS, the Board of Commissioners seeks to retain the law firm Gembala, McLaughlin & Pecora /Co., LPA at its customary hourly rate to review and advise on matters where the Lorain County Prosecutors Office has identified a conflict of interest and to take whatever actions are necessary to protect the interests of the County Commissioners, the County employees and the citizens of Lorain County; and

WHEREAS, the Lorain County Board of Commissioners has determined that retention of Gembala, McLaughlin & Pecora Co., LPA for these purposes is necessary and proper.

NOW, THEREFORE BE IT RESOLVED, by the Lorain County Board of Commissioners that:
1.   The Board of Commissioners hereby retains the law firm of Gembala, McLaughlin & Pecora Co., LPA at its customary hourly rate to provide independent counsel and advice where the Lorain County Prosecutors Office has identified a conflict of interest and to take whatever actions are necessary to protect the interests of the County Commissioners, the County employees and the citizens of Lorain County; and
2.   The President of the Board of Commissioners is hereby authorized to execute all documents consistent herewith; and
3.   It is found and determined that all formal actions of the Board of Commissioners relating to the adoption of this resolution were taken in an open meeting, and all deliberations of Lorain County Board of Commissioners that resulted in this action were conducted in compliance with all legal requirements
4.   All legal bills for these said services will be paid from Lorain County 911 Acct#3480.0000.100.000.03.6200.6218-9.1.1 Professional Services

Motion by Moore, seconded by Gallagher  to adopt. Upon roll call the vote taken thereon, resulted as: Ayes: Moore, Gallagher & Riddell / Nays: None /
Motion carried.                                        _____(discussion was held on the above)

I, Theresa L. Upton, Clerk to the Lorain County Board of Commissioners do hereby certify that the above Resolution 25-797 is a true copy as it appears in Journal No. 25 on November 21, 2025.

Theresa L. Upton, Clerk

MEMORANDUM OF UNDERSTANDING
DISPATCH OPERATIONS


This Memorandum of Understanding (MOU) entered into by and between the Board of Commissioners of Lorain County, Ohio (Board) and the Phil R. Stammitti, in his capacity as the Sheriff of Lorain County (Sheriff) at Elyria, Ohio on the date both parties have affixed their signatures below.

Preamble

WHEREAS, Sheriff as part of his duties operates the Lorain County Sheriff's Office Communication Center at the Lorain County Jail located at 9896 Murray Ridge Road, Elyria, Ohio; and

Whereas, said Communication Center provides dispatch services as part of the law enforcement function of the office of the Sheriff and the Sheriff employs deputies to operate the Communication Center; and further

WHEREAS, the Board operates the Lorain County 911 Center at 322 North Gateway Boulevard, Elyria, Ohio; and

Whereas, the Board provides dispatch services  for emergency services and employs personnel to operate the 911 Center; and

WHEREAS, in order to operate both dispatch centers in a more economically efficient manner, it is the desire of the Board and Sheriff to merge the dispatch services provided at the Sheriff's Communication Center with the 911 Center.

THEREFORE, IN CONSIDERATION OF the mutual promises and covenants herein contained and other good and valuable consideration the Board and Sheriff agree to collaborate in the merging of dispatch services provided by each party so as to achieve a single dispatching unit to be located at the 911 Center. The collaborative effort shall consist of the following steps:

## I.    Effective date of merger

A.    This MOU will take effect upon the date indicated below at which both parties have affixed their respective signatures.

B.    It will be the goal of the parties to effectuate consolidation of dispatch services at the earliest possible date, preferably the Fall or Winter of 2011. The parties as soon as practicable will agree upon a "switch over" date whereupon mirror dispatching will commence at the 911 Center.

C.    This MOU will continue from year to year unless terminated by mutual written

agreement of both parties.

D.  The parties acknowledge that the Board may merge dispatch services of other entities with operations at the 911 Center. Nothing in this MOU shall be deemed to preclude the Board from reaching a separate agreement with other entities for the operation of dispatch services at the 911 Center. Such an agreement may be made through separate agreement between the Board and entities, or may be done through amendment of this MOU. Any separate agreement made by the Board would be  completely  independent of this MOU and not subject to any of the terms and conditions of this MOU unless expressly provided therein.

## II.  Equipment

A.  The parties will collaborate through the use of in-house resources or with the assistance of consultants to identify and describe equipment that will  need to be procured or upgraded to conduct law enforcement dispatching operation as the 911 Center.

B.  The parties will collaborate through the use of in-house resources or with the assistance of consultants to evaluate the 911 Center and identify its present suitability for law enforcement dispatching and identify recommendations for present needs and projected expansion.

C.  The parties will collaborate through the use of in-house resources or consultants to preparer specifications and bids or request for proposals to obtain equipment or modify the 911 Center to accommodate the needs identified pursuant to Section II(A) & (B) immediately above.

## III.  Personnel

The parties recognize that the merger of the dispatch operations will require a consolidation of personnel into one unit. The parties further recognize that certain personnel will conduct safety dispatch services, and it will be conducive to the operations of the merged center to have the input and expertise of the Sheriff and his staff provide assistance, consultation and guidance relating to such activity. The parties agree to collaborate through the use of in-house resources or with the assistance of consultants in the implementation of the following procedures:

A  Re-organizational planning

1.  Prepare a written plan to reorganize the departments addressing staff functions and realignment of supervisory positions and responsibility. This will include a co-management transition plan that incorporates

management goals and ending targets.

2.. The Sheriff and Board shall prepare Standard of Operations Procedures and other work and dispatching procedures for the combined operations at the 911 Center. The procedures shall be not become effective until approved by the Board.

3. Prepare a detailed training program including defined milestones for unification of management and work functions. Establish parameters for background checks.

B. Implementation of staffing changes

1. Meet with and coordinate with USWA to implement additional staffing , including establishing seniority "leveling: dates, work transition and addressing existing bargaining agreements.

2.. Prepare layoff notices for dispatchers employed with the Sheriff.

3. Recruit and hire additional supervisory staff.

4. Conduct interviews and letters of employment at 911 for those dispatchers who are laid off from the Sheriff's office

## IV. Operations

A. Board responsibilities

1. The Board shall be the "Appointing Authority" for all matters pertaining to hiring or terminating employees, and imposing major discipline involving suspension or loss of pay, etc.

2. The Board shall be the Employer and handle all matters regarding contract and union negotiations.

3. The Board shall be fiscal agent and contracting authority.

B. In order to infuse the expertise and experience of the Sheriff, the Sheriff will assist and collaborate in the conduct of day to day operations of the facility which require the qualifications and knowledge of safety force personnel, including the following:

1. Sheriff will create and maintain Standard Operating Procedures (SOPs) which must be approved by the Board along with any major modifications as set forth in Section III(A)(2) above.

2. Imposing minor discipline such as instruction & cautioning, written and reprimands.

3. Sheriff shall conduct background investigations for employees and conduct investigations involving employee behavior issues.

4. The parties shall consult and mutually determine the personnel who shall conduct Pre-Disciplinary Hearings.

5. The parties acknowledge that the Law Enforcement Automated Data System (LEADS), Computerized History Records (CCH) and the Ohio Law Enforcement Gateway System (OHLEG) have restrictions imposed by law which limit persons who may have access to such programs.    The Sheriff shall determine compliance with the law and determine which personnel shall have access to that information.

6. The Board anticipates that it will apply to have the 911 Center obtain approval as a LEADS Agency. Upon approval as a LEADS Agency, the authority for allowing access as provided in Article IV(B)(5) shall be the LEADS Agency to be managed by the Lorain County Sheriff.

7. Sheriff shall swear in persons entitled to access to the information described above in Section (B)(5).

8. Sheriff shall issue warrants and related document preparation.

C. The parties acknowledge that until the Sheriff has completed training of the 911 Center personnel, it will be necessary for the Sheriff to maintain more intensive oversight during transition than will be necessary after transition in order to assure adequate law enforcement. Sheriff will oversee daily operations of dispatch services needed for law enforcement purposes until such time as the parties agree that the staff is properly trained. The training oversight transition period will terminate no later than one year from the date of this MOU unless mutually agreed in writing by the parties that it is necessary to extend the training to assure adequate dispatch services. Upon conclusion of the transition period, the Sheriff will continue with the role as set forth in division (B) of this Article.

## V.    Implementation goals

The parties recognize that the merger of two formally separate and independent operations will require a high level of cooperation and exchange of ideas and concepts. Realizing that every aspect of such large endeavor can not be anticipated, it is nevertheless the goal of the parties to accomplish this merger in an expeditious manner so as to obtain the economic benefit of cost savings. The parties further recognize the impact that such a consolidation has upon the personnel involved and agree to consider that impact in the implementation of this MOU

## VI.   Amendment and Approval by LEADS

This MOU may be amended by written agreement of both parties. The parties agree that this Agreement shall be contingent upon the approval of LEADS and NCIC.

WHEREFORE, the parties hereto the Board of Commissioners of Lorain County, Ohio and the Lorain County Sheriff do hereunder set forth their signatures on the dates hereafter indicated.

LORAIN COUNTY BOARD
OF COMMISSIONERS:

_____
Ted Kalo            Date:

_____
Lori Kokoski        Date:

_____
Tom Williams        Date    8/24/2011

LORAIN COUNTY SHERIFF;

_____
Phil R. Stammitti    Date:    08-24-11

Approved as to Form:

_____
Gerald A. Innes, Assistant Prosecuting
Attorney



# SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE

9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

December 12, 2025

Ohio LEADS
Ohio Department of Public Safety
1970 West Broad Street
Columbus, Ohio 43223

### Subject: LORAIN COUNTY 911 SECURITY VIOLATION - CJIS

To LEADS Security Team:

I am writing to advise you of a potential CJIS security violation involving the Tyler / New World public safety data system at Lorain County 911.

The Tyler/New World public safety system is the central repository of public safety information for police, fire and EMS dispatching and reporting in Lorain County. Most all Lorain County law enforcement agencies utilize this system for CAD/RMS and storage of their CJIS data. Many fire and EMS agencies utilize the system for dispatch and service call information. The Tyler/New World system has direct connectivity to Ohio LEADS, NCIC and CCH information.

Pursuant to a Memorandum of Understanding – Dispatch Operations (attached Exhibit A), the Lorain County Sheriff shall determine compliance with Ohio law and regulations of the LEADS, CCH and OHLEG systems utilized by personnel of Lorain County 911 (at paragraph 5 of Article IV, Section B). Additionally, the Lorain County Sheriff shall authorize access to the LEADS ORI utilized by Lorain County 911 (at paragraph 6 of Article IV, Section B).

My agency initiated a criminal investigation into a vendor utilized by Lorain County 911 known as ▮▮▮▮▮▮▮▮▮▮ and its principle – ▮▮▮▮▮▮▮▮. This investigation involves felony-level offenses and the investigation is being conducted by our public corruption unit.

On November 7, 2025 I met with the following individuals to advise them of an on-going investigation into the vendor and advised same to terminate access to CJIS-related information utilized by Lorain County 911: Jeff Riddell – County Commissioner; Jeff Armbruster – County Administrator; Kurt Scholl – 911 Director; Michael Davis – Deputy Director; Todd Sharkey – Director of IT Services; Billie Jo Belcher – Chief of Staff Lorain County Prosecutor / LASO for Lorain County Sheriff; Tony Cillo – Lorain County Prosecutor.

At the November 7th meeting, parties were provided with a directive by me which outlined the necessity to remove ▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮ from having access to CJIS data (attached Exhibit B) at Lorain County 911.

On December 8, 2025 I met with Commissioner Jeff Riddell who demanded that I lift the restriction and allow the vendor to have access to the Tyler/New World database to complete important work they required of her. I advised the vendor may have escorted access in the physical building of 911 and assist with fire/EMS projects that were not affiliated with CJIS, however she could not have access to CJIS data. He requested a letter by sent to County Administrator Jeff Armbruster clarifying my position on the vendor's access to the Lorain County 911 facility (attached Exhibit C). Later that day, Riddell sent me a text message requesting the vendor have access to the Sheriff's Office data as well. The text was ignored.

On December 10, 2025, I requested of our TAC – Russ Scarborough to conduct an audit regarding access of the vendor to the Lorain County 911 System – specifically the CJIS data of the system. The audit revealed the vendor continued to access the Tyler/New World database via "Mobile Law Enforcement" and "Enterprise Mobile" 22 times from November 9 – November 19, 2025 (attached Exhibit D).

Additionally, I was advised the vendor was assigned administrative rights to the Tyler/New World system with System Admin and Super_Auth_All (also known as the God Access with ultimate control of the public safety network) (attached Exhibit E). These rights were in full effect on December 10, 2025.

On December 11, 2025, I received correspondence from Lorain County Administrator Armbruster – dated December 10, 2025 who advised there was no longer a need to comply with my access request for the vendor as the vendor decided to terminate her relationship with the county (attached Exhibit F). A second audit of the vendor was conducted on this date and the vendor's access had remained unchanged.

I replied on Armbruster on December 11th requesting the vendor's access be immediately terminated per my original order dated November 7th and provided a deadline of 23:59 that evening to fulfill same (attached Exhibit G). Armbruster was advised that failure to do so would result in my staff removing the vendor after midnight. The vendor was removed from the system and administrative access terminated at 20:17 on December 11, 2025.

I would like to set a date with your team at your earliest convenience to discuss this issue and compliance regulations.

In your service,

Jack M. Hall
Sheriff

EXHIBIT A

## MEMORANDUM OF UNDERSTANDING
## DISPATCH OPERATIONS

This Memorandum of Understanding (MOU) entered into by and between the Board of Commissioners of Lorain County, Ohio (Board) and the Phil R. Stammitti, in his capacity as the Sheriff of Lorain County (Sheriff) at Elyria, Ohio on the date both parties have affixed their signatures below.

### Preamble

WHEREAS, Sheriff as part of his duties operates the Lorain County Sheriff's Office Communication Center at the Lorain County Jail located at 9896 Murray Ridge Road, Elyria, Ohio; and

Whereas, said Communication Center provides dispatch services as part of the law enforcement function of the office of the Sheriff and the Sheriff employs deputies to operate the Communication Center; and further

WHEREAS, the Board operates the Lorain County 911 Center at 322 North Gateway Boulevard, Elyria, Ohio; and

Whereas, the Board provides dispatch services for emergency services and employs personnel to operate the 911 Center; and

WHEREAS, in order to operate both dispatch centers in a more economically efficient manner, it is the desire of the Board and Sheriff to merge the dispatch services provided at the Sheriff's Communication Center with the 911 Center.

THEREFORE, IN CONSIDERATION OF the mutual promises and covenants herein contained and other good and valuable consideration the Board and Sheriff agree to collaborate in the merging of dispatch services provided by each party so as to achieve a single dispatching unit to be located at the 911 Center. The collaborative effort shall consist of the following steps:

### I. Effective date of merger

A. This MOU will take effect upon the date indicated below at which both parties have affixed their respective signatures.

B. It will be the goal of the parties to effectuate consolidation of dispatch services at the earliest possible date, preferably the Fall or Winter of 2011. The parties as soon as practicable will agree upon a "switch over" date whereupon mirror dispatching will commence at the 911 Center.

C. This MOU will continue from year to year unless terminated by mutual written

agreement of both parties.

D.  The parties acknowledge that the Board may merge dispatch services of other entities with operations at the 911 Center. Nothing in this MOU shall be deemed to preclude the Board from reaching a separate agreement with other entities for the operation of dispatch services at the 911 Center. Such an agreement may be made through separate agreement between the Board and entities, or may be done through amendment of this MOU. Any separate agreement made by the Board would be   completely   independent of this MOU and not subject to any of the terms and conditions of this MOU unless expressly provided therein.

## II.  Equipment

A.  The parties will collaborate through the use of in-house resources or with the assistance of consultants to identify and describe equipment that will   need to be procured or upgraded to conduct law enforcement dispatching operation as the 911 Center.

B.  The parties will collaborate through the use of in-house resources or with the assistance of consultants to evaluate the 911 Center and identify its present suitability for law enforcement dispatching and identify recommendations for present needs and projected expansion.

C.  The parties will collaborate through the use of in-house resources or consultants to preparer specifications and bids or request for proposals to obtain equipment or modify the 911 Center to accommodate the needs identified pursuant to Section II(A) & (B) immediately above.

## III.  Personnel

The parties recognize that the merger of the dispatch operations will require a consolidation of personnel into one unit. The parties further recognize that certain personnel will conduct safety dispatch services, and it will be conducive to the operations of the merged center to have the input and expertise of the Sheriff and his staff provide assistance, consultation and guidance relating to such activity. The parties agree to collaborate through the use of in-house resources or with the assistance of consultants in the implementation of the following procedures:

A  Re-organizational planning

1.  Prepare a written plan to reorganize the departments addressing staff functions and realignment of supervisory positions and responsibility. This will include a co-management transition plan that incorporates

management goals and ending targets.

    2..     The Sheriff and Board shall prepare Standard of Operations Procedures and other work and dispatching procedures for the combined operations at the 911 Center. The procedures shall be not become effective until approved by the Board.

    3.     Prepare a detailed training program including defined milestones for unification of management and work functions. Establish parameters for background checks.

B.     Implementation of staffing changes

    1.     Meet with and coordinate with USWA to implement additional staffing, including establishing seniority "leveling: dates, work transition and addressing existing bargaining agreements.

    2..     Prepare layoff notices for dispatchers employed with the Sheriff.

    3.     Recruit and hire additional supervisory staff.

    4.     Conduct interviews and letters of employment at 911 for those dispatchers who are laid off from the Sheriff's office

## IV.    Operations

A.     Board responsibilities

    1.     The Board shall be the "Appointing Authority" for all matters pertaining to hiring or terminating employees, and imposing major discipline involving suspension or loss of pay, etc.

    2.     The Board shall be the Employer and handle all matters regarding contract and union negotiations.

    3.     The Board shall be fiscal agent and contracting authority.

B.     In order to infuse the expertise and experience of the Sheriff, the Sheriff will assist and collaborate in the conduct of day to day operations of the facility which require the qualifications and knowledge of safety force personnel, including the following:

1.     Sheriff will create and maintain Standard Operating Procedures (SOPs) which must be approved by the Board along with any major modifications as set forth in Section III(A)(2) above.

2.     Imposing minor discipline such as instruction & cautioning, written and reprimands.

3.     Sheriff shall conduct background investigations for employees and conduct investigations involving employee behavior issues.

4.     The parties shall consult and mutually determine the personnel who shall conduct Pre-Disciplinary Hearings.

5.     The parties acknowledge that the Law Enforcement Automated Data System (LEADS), Computerized History Records (CCH) and the Ohio Law Enforcement Gateway System (OHLEG) have restrictions imposed by law which limit persons who may have access to such programs. The Sheriff shall determine compliance with the law and determine which personnel shall have access to that information.

6.     The Board anticipates that it will apply to have the 911 Center obtain approval as a LEADS Agency. Upon approval as a LEADS Agency, the authority for allowing access as provided in Article IV(B)(5) shall be the LEADS Agency to be managed by the Lorain County Sheriff.

7.     Sheriff shall swear in persons entitled to access to the information described above in Section (B)(5).

8.     Sheriff shall issue warrants and related document preparation.

C.     The parties acknowledge that until the Sheriff has completed training of the 911 Center personnel, it will be necessary for the Sheriff to maintain more intensive oversight during transition than will be necessary after transition in order to assure adequate law enforcement. Sheriff will oversee daily operations of dispatch services needed for law enforcement purposes until such time as the parties agree that the staff is properly trained. The training oversight transition period will terminate no later than one year from the date of this MOU unless mutually agreed in writing by the parties that it is necessary to extend the training to assure adequate dispatch services. Upon conclusion of the transition period, the Sheriff will continue with the role as set forth in division (B) of this Article.

## V.   Implementation goals

The parties recognize that the merger of two formally separate and independent operations will require a high level of cooperation and exchange of ideas and concepts. Realizing that every aspect of such large endeavor can not be anticipated, it is nevertheless the goal of the parties to accomplish this merger in an expeditious manner so as to obtain the economic benefit of cost savings. The parties further recognize the impact that such a consolidation has upon the personnel involved and agree to consider that impact in the implementation of this MOU

## VI.    Amendment and Approval by LEADS

This MOU may be amended by written agreement of both parties. The parties agree that this Agreement shall be contingent upon the approval of LEADS and NCIC.

WHEREFORE, the parties hereto the Board of Commissioners of Lorain County, Ohio and the Lorain County Sheriff do hereunder set forth their signatures on the dates hereafter indicated.

LORAIN COUNTY BOARD
OF COMMISSIONERS:

Ted Kalo                    Date:

Lori Kokoski         Date:

Tom Williams         Date          8/24/2011

LORAIN COUNTY SHERIFF;

Phil R. Stammitti         Date:          08-24-11

Approved as to Form:

Gerald A. Innes, Assistant Prosecuting Attorney



# SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE
9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

EXHIBIT B

November 7, 2025

Lorain County Board of County Commissioners
Lorain County 911
226 Middle Avenue, 4th Floor
Elyria, Ohio 44035

**Subject: Formal Request for Removal of Consultant ███████████ from Lorain County 911 and CJI Access**

To the Lorain County Board of Commissioners,

I am writing to formally advise the immediate removal of ███████████ from any role, access, or involvement with Lorain County 911 (as outlined below), which is jointly managed by the Lorain County Sheriff's Office and is subject to strict CJIS compliance requirements for which the Sheriff is responsible.

Given my responsibility for law enforcement operations and CJIS compliance per the terms of the MOU, I respectfully advise that ███████████ shall be removed from all duties related to the 911 agency as related to LEADS, NCIC and CJIS effective immediately and that confirmation of this action be provided in writing no later than close of business on Monday – November 10, 2025.

Thank you for your prompt attention to this matter. Please feel free to contact me directly should you require any further information or clarification.

Thank you,

Jack M. Hall
Lorain County Sheriff



# SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE
9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

EXHIBIT C

December 8, 2025

Lorain County Board of County Commissioners
Lorain County 911
226 Middle Avenue, 4th Floor
Elyria, Ohio 44035

**Subject: Formal Request for Removal of Consultant ▉▉▉▉▉▉▉▉ from Lorain County 911 and CJI Access**

To the Lorain County Board of Commissioners,

Please accept this correspondence as an update to my original memorandum dated November 7, 2025 entitled with the same subject line.

▉▉▉▉▉▉▉▉ and ▉▉▉▉▉▉▉ would certainly have escorted access to the Lorain County 911 facilities (physical plant). Additionally, I cannot restrict the company nor ▉▉▉▉▉▉ from non-CJIS data or applications such as fire and EMS data tables, stored data or applications – nor the network access to such.

Please feel free to contact me if you have any questions regarding this update.

Thank you.

Jack M. Hall
Lorain County Sheriff

Security Management  EXHIBIT D

| | | | | |
|---|---|---|---|---|
| Yes | 11/19/2025 01:50:41 | 172.30.169.133 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/18/2025 13:50:39 | 172.30.165.97 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/18/2025 01:50:38 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/17/2025 13:50:36 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/17/2025 01:50:35 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/16/2025 13:50:33 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/16/2025 01:50:32 | 172.30.165.112 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/15/2025 13:54:13 | 172.30.164.29 | ip-172-30-164-29.us-gov-wes... | Enterprise Mo |
| Yes | 11/15/2025 13:50:30 | 172.30.164.29 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/15/2025 01:50:28 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/14/2025 13:50:26 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/14/2025 01:50:25 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/13/2025 13:50:23 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/13/2025 01:50:22 | 172.30.169.11 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/12/2025 13:50:20 | 172.30.169.11 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/12/2025 01:50:19 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/11/2025 13:50:17 | 172.30.164.185 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/11/2025 01:50:16 | 172.30.164.187 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/10/2025 13:50:14 | 172.30.164.187 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/10/2025 01:50:13 | 172.30.165.50 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/09/2025 13:50:11 | 172.30.169.122 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |
| Yes | 11/09/2025 01:50:10 | 172.30.164.151 | TEPSCLTPRD.lcohdata.com | Mobile - Law E |

## User ▾

Name | Agency | Username
--- | --- | ---
████████ | OH047013N | ████████

## General

☐ Domain User (Password will be managed externally)  ☐ Locked Out  ☑ Administrator  ☐ Inactive

| * Username | * User Alias | * Last Name | |
| --- | --- | --- | --- |
| ████ | ████ 911 | ████ | ████ |

| Email Address | * Default Agency | Assigned Map | State ID |
| --- | --- | --- | --- |
| | OH047013N ▾ | LorainCoOH ▾ | |

☐ Reset Password  ☐ Force Password Change  ☐ Email Password

| Password | Confirm Password | * Password Expiration Policy |
| --- | --- | --- |
| | | Default ▾ |

☐ Expire User Account  User Account Expiration Date  📅

Save  [ Cancel ]

EXHIBIT E

☑ 911 Adm External Agen
☑ 911 TAC
☑ Administrator 2
☐ Alarm Management
☐ ALPD Administrative Secretary
☑ ALPD Administrator
☐ ALPD Chief
☐ ALPD Detective
☐ ALPD Detective Sergeant
☐ ALPD Dispatcher
☐ ALPD Dispatcher / Records

☑ Auth All
☑ Auth All 911

☐ Auth All LaGrange
☐ Auth All LCSO
☑ Auth All Lorain PD
☐ Auth All Metro Parks
☑ Auth All North Ridgeville PD

☐ Investigator
☑ LAPD Admin
☐ LAPD Det

☐ Link Privileges
☑ LORAIN COUNTY GLOBAL ACCESS
☐ Lorain County Metro Parks

☐ LPD Detention Officer Supervisor
☑ LPD IT Staff
☐ LPD Law Deparment

☐ NRPD Supervisors
☑ OPD Admin Staff
☐ OPD Chief

☐ Patrol Supervisor
☑ Personnel Admin
☐ Police CAD View

☑ Super_Auth_All
☑ System Admin - CAD
☑ System Admin - CMS
☑ System Admin - Fire
☑ System Admin - LERMS
☑ System Administrator



# LORAIN COUNTY COMMISSIONERS

**Marty Gallagher**     **David J Moore**     **Jeff Riddell**

Jeffry J Armbruster, County Administrator

EXHIBIT F

December 10, 2025

Dear Sheriff Hall:

I am responding to your letter to the Board of Commissioners dated December 8, 2025. Thank you for the update to your November 7, 2025, letter; however, your proposed accommodation to ▮▮▮▮ and her company is no longer relevant. ▮▮▮▮ has retained legal counsel regarding its (and ▮▮▮▮) exclusion from Lorain County 911, which ▮▮▮▮ says interferes with ▮▮▮▮ contract with the County. Through counsel, ▮▮ ▮▮ has threatened to sue the County over what ▮▮▮▮ perceives as a threat of criminal prosecution and unlawful interference with B4 Health's contract with the County.

This, of course, has created a very real problem for the County because her expertise was an extremely valuable component to implementing and monitoring the County's 911 operations. The County is taking all expedient action to replace ▮▮▮▮ and ▮▮▮▮, but this situation unnecessarily threatens the County's 911 operations and increases the risk to Lorain County residents and first responders, which the County must now resolve. I hope that we can count on you to provide all necessary support to the next IT services provider at 911 as the County performs its duties as the operator and contracting authority for Lorain County 911.

Respectfully submitted,

Jeffry J Armbruster
Lorain County Administrator



## SHERIFF JACK M. HALL

## LORAIN COUNTY SHERIFF'S OFFICE
### 9896 MURRAY RIDGE ROAD - ELYRIA, OHIO 44035

EXHIBIT 6

December 11, 2025

Lorain County Board of County Commissioners
c/o Jeff Armbruster, Administrator
Lorain County 911
226 Middle Avenue, 4th Floor
Elyria, Ohio 44035

**Subject: December 10, 2025 Correspondence**

To Administrator Armbruster,

I am in receipt of your letter dated December 10, 2025.

Am I correct to understand from your letter that ▇▇▇▇▇▇▇▇▇ and ▇▇▇▇ ▇▇▇▇ have terminated their relationship with Lorain County – specifically Lorain County 911 due to your opining that my proposed accommodation for her and her company, "… is no longer relevant?"

I ask this because after auditing the user credentials of Tyler Technologies on December 10, 2025 – the date of your correspondence, ▇▇▇▇▇▇▇ is credentialed as an administrator-level account with "Super Administrator" and "Super_Auth_All" – having full and uninhibited network control of the Tyler / New World public safety database which includes CJIS-protected information. After receiving your correspondence on this date (November 11, 2025), I conducted a second audit and found no change in ▇▇▇▇▇▇ credentials.

This is quite disturbing to me as I directed the Board on November 7, 2025 pursuant to my authorities under the Memorandum of Understanding Dispatch Operations (MOU) and specific legal authorities as prescribed by the Ohio Revised Code to terminate the Tyler / New World CJIS access for ▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇. I learned this directive was never complied with and ▇▇▇▇▇▇ continued to access CJIS-related information as a super administrator through her network login audit trail until November 19, 2025.

▇▇▇▇▇▇ should have been removed from CJIS access on November 7, 2025. As you indicate she is no longer affiliated with Lorain County, I am requesting proof of her removal from the Tyler / New World public safety database system by 23:59 hours this date of December 11, 2025. If de-activation / deletion of her account is not performed by the Board as directed above, I will direct my staff to remove her credentials.

Page 2

As I interpret this as a CJIS security violation, I will report this circumstance to Ohio LEADS by the end of business day tomorrow (December 12, 2025). I will forward you and the Board a copy of my complaint and findings.

Please be advised that prior to the assignment of new personnel who will have CJIS access to the facilities and records of Lorain County 911, such persons are subject to a background investigation by my office pursuant to the MOU. I would recommend such persons be forwarded to my office for a background investigation prior to employment, however such investigation must be done prior to such person(s) having access to CJIS data.

You can certainly count on my office to provide all necessary support to the next IT services provider at 911 as it is my statutory and contractual duty to do so which I take this responsibility seriously for the safety of the residents of Lorain County.

In your service,

Jack M. Hall
Sheriff

**From:** KLocke@dps.ohio.gov <KLocke@dps.ohio.gov>
**Sent:** Wednesday, December 17, 2025 1:15:12 PM
**To:** Sheriff Jack Hall <jhall@loraincountysheriff.com>; Billie Jo Belcher <BillieJo.Belcher@lcprosecutor.org>; JHansford@dps.ohio.gov <JHansford@dps.ohio.gov>; kjoseph@dps.ohio.gov <kjoseph@dps.ohio.gov>; VDowdy@dps.ohio.gov <VDowdy@dps.ohio.gov>
**Cc:** Russell Scarbrough <rscarbrough@loraincountysheriff.com>
**Subject:** RE: [EXTERNAL]RE: LEADS Access Report

Sheriff Hill,

Thank you for notifying LEADS of the potential security violation.  LEADS has opened an incident report, which will be updated as your office's investigation progresses.

Based on the information provided, LEADS understands that vendor access to CJIS-related systems was continued despite a documented directive to revoke such access.  This included the retention of elevated administrative privileges, which raises significant concerns.

LEADS Security reviewed the documentation and correspondence related to this incident.  This matter should be evaluated against the following applicable CJIS Security Policy v6.0 requirements.

- Identification and Authentication (IA): Account management, credential control, and access revocation

- Access Control (AC): Authorization, role-based access, least privilege, and privileged account management

- Audit and Accountability (AU): Audit logging, review, and accountability for system access

- Personnel Security (PS): Vendor access controls, background screening, and enforcement of disciplinary procedures

- Incident Response (IR): Identification, documentation, and reporting of suspected CJIS security incidents

The review should include evaluation of authorization approvals, access justification, audit trail records, account and privilege management practices.

I have included Victoria Dowdy Deputy CSO on this communication.

Thank you for your continued partnership and commitment to CJIS security compliance.

Kevin J. Locke
Information Security Officer (ISO)
LEADS Security Supervisor
Ohio State Highway Patrol
1970 West Broad Street
Columbus, Ohio 43223
(614) 466-3055 Help Desk
(614) 387-6156 Direct
(614) 644-2459 FAX
LEADSSecurity@dps.ohio.gov

**EXHIBIT H**



| | |
|---|---|
| 440.930.4001 | 5455 Detroit Road |
| www.gmpfirm.com | Sheffield Village, Ohio 44054 |

**Direct**: 440.930.4022
**Email**: dotoole@gmpfirm.com

December 30, 2025

**VIA ELECTRONIC MAIL: rpanza@wickenslaw.com**
Richard D. Panza
Wickens Herzer Panza
35765 Chester Road
Avon, OH 44011

**RE:    Dispute between Lorain County Commissioners and Lorain County Sheriff regarding Lorain County 9-1-1 Services**

Dear Attorney Panza,

I am well aware of my client's resolution, passed at the request of your client and with the concurrence of the Lorain County Prosecutor, due to his conflict of interest. Likewise, I am sure you are aware that this firm represents the Lorain County Board of Commissioners (the "Board"). Our representation includes advising the Board on 9-1-1 public safety communications for the County. Your December 29th letter confirms that the troubling recent actions taken by the Lorain County Sheriff are motivated by a political power grab at the expense of public safety. The Board hopes that this dispute can be resolved amicably, but, to be clear, the Sheriff needs to cease its efforts to infringe on the Board's operations of emergency communications for the County. The Sheriff's conduct is detrimental to 9-1-1 operations and unnecessarily jeopardizes the health and safety of Lorain County residents and first responders.

The County's 9-1-1 system and the MOU

Your recitation of Ohio statutes and case law is rather selective. So let me set the facts, the law, and the record straight.

First and foremost, and as discussed below, the Board of Commissioners took on the task of providing for the public safety communication needs of Lorain County well before the adoption of the statute your letter cites in bold italics. Which of course leads to the relevant statute on this particular issue: R.C. 307.63(F).

Second, the immediate concern of my client is that in recent months, the Sheriff has taken increasingly hostile action toward the Board's operations of the County's emergency communications systems. This has most clearly manifested in the Sheriff's unilateral

Richard D. Panza
Wickens Herzer Panza
December 30, 2025
Page 2 of 4

expulsion of the County's principal IT consultant for 9-1-1 operations, ███████ ███████ and ███████ ███████, under the guise of a pending "criminal investigation." In multiple communications to the County Administrator and 9-1-1 officials, and as echoed in your December 29th letter, Sheriff Hall asserted authority for these actions under a complete misreading of the MOU and relevant law.

As a threshold issue, the Sheriff has no authority to direct operations of the County's 9-1-1 system, which is controlled by the Board under R.C. Chapter 128. Pursuant to its statutory authority, the Board operates the 9-1-1 system with funding from the County's 9-1-1 levy. Under R.C. 128.05, County 9-1-1 Director Kurt Scholl is in charge of operating the County 9-1-1 system – not the Sheriff. The County's emergency communications systems, operated through County 9-1-1, is broader than the statutory definition of "9-1-1 system." This communication system has evolved over the last 40 years and, as your client is aware, eventually incorporated the "sheriff's dispatch communication system" pursuant to the Memorandum of Understanding signed by both parties on August 24, 2011.

Neither the MOU nor R.C. 307.63 provide the Sheriff authority to operate or control emergency communications in Lorain County. Fundamentally, R.C. 307.63(A) does not apply to Lorain County because the County 9-1-1 system and its predecessors predate that statute:

> the authority granted to a county sheriff under division (B) of this section to operate a countywide public safety communications system does not apply in any county where, **on and before the effective date of this section, the board of county commissioners is providing public safety communications facilities to, or coordinating the public safety communications needs of, municipal corporations, townships, or other entities or officials by means of officials or with employees not under the direct supervision of the county sheriff.** However, if such a board of county commissioners and the county sheriff mutually agree that the sheriff will operate a countywide public safety communications system, he may operate it.

(R.C. 307.63(F)) (emphasis added).

R.C. 307.63 became effective on March 15, 1993, and Lorain County's 9-1-1 communications systems date back to 1983. Notably absent from your letter was a discussion of *State ex rel. Davis v. Delaware Cnty Comm'rs*, a case directly on point, where the Fifth District rebuffed a county sheriff's attempt to wrestle emergency communications away from a county board of commissioners. *See* 2009-Ohio-825 (5th Dist.). In *Davis*, the appellate court ruled that the county sheriff did not have authority under R.C. 307.63 to assume operational control of the county's emergency communications systems because the county system predated the statute. *Id.*, at ¶¶ 8-15 (applying R.C. 307.63(F)). The same is true here.


Gembala McLaughlin & Pecora

Richard D. Panza
Wickens Herzer Panza
December 30, 2025
Page 3 of 4

Even assuming *arguendo* that the Sheriff had statutory authority to operate a countywide system, he ceded that authority to the Board under the MOU. Under the MOU, the Sheriff agreed to merge its dispatch communications into County 9-1-1. (*See* MOU, p. 1 ("WHEREAS, in order to operate both dispatch centers in a more economically efficient manner, it is the desire of the Board and Sheriff to merge the dispatch services provided at the Sheriff's Communications Center with the 9-1-1 Center.") The MOU empowers the Board to operate the County 9-1-1 system and relegates the Sheriff to an advisory role. For example, the MOU permits the Board to contract with other entities to merge dispatch services into the County 9-1-1 Center. (*Id.*, at I(D)). The Board is also the "Appointing Authority" for all matters pertaining to hiring or terminating employees. (*Id.*, at IV(A)). The Board is also charged with contract and union negotiations and is the fiscal agent and contracting authority for the system. (*Id.*).

The Sheriff is provided with certain advisory authority under the MOU, including maintaining standard operating procedures (subject to Board approval), conducting employee background checks and investigations, and imposing minor employee discipline. (*Id.*, at IV(B)). While the MOU acknowledges that LEADS, CCH, and OHLEG "have restrictions imposed by law which limits persons who may have access to such programs," the Sheriff's oversight of this access is limited to determining whether the person's access to these databases complies with existing law. (MOU, at Section IV(B)(5)). This provision does not permit the Sheriff to operate or control the emergency communications systems themselves.

In addition to the MOU, the Sheriff's predecessor unequivocally signaled that he would not cooperate in further improvements to the County's emergency communications systems, like the County's transition to MARCS. In a December 18, 2023 email, Sheriff Stammitti wrote, "[a]s Sheriff of Lorain County, I want to go on record that I do *not* support or want to join in on this MARCS System that the County Officials have negotiated on their own and are attempting to force us to." Under R.C. 307.63, once a sheriff gives notice that he chooses not to operate a countywide public safety communications system, "neither he nor any person occupying the office of county sheriff in the future may choose to operate the system at a later date..." (R.C. 307.63(B)(1)). Going back almost 15 years, the Lorain County Sheriff has repeatedly confirmed that he will not operate any countywide communications system, and the current Sheriff cannot suddenly assert control now.

████████████████ and ████████████ expulsion

The Sheriff's actions toward ████████ and ████████████ remain particularly concerning because it exposes the County to litigation over ████████████ expulsion and interference with ██████████ county contract. ████████ has already retained counsel in this matter. Equally troubling is the public health and safety risk that have arisen from the Sheriff abruptly and unilaterally expelling the County's primary IT consultant from 9-1-1 operations. There have been multiple instances of the 9-1-1 system needing those



Richard D. Panza
Wickens Herzer Panza
December 30, 2025
Page 4 of 4

services only to have them thwarted by the actions of your client. As troubling are the optics of the insertion of the County Prosecutor's chief of staff on your client's staff and to have her involved on matters under the jurisdiction of the County's consultant. We are also deeply concerned that the 6 month delay in the approval of the standard form consulting agreement with ██████ was part of the sheriff's vendetta against the County and its consultant.

One might very well conclude that your client, unable to bring the County to its knees on the operation and control of the 9-1-1 system and countywide public safety communications, *sua sponte* initiated a criminal investigation of ██████ herself, intending such an investigation to end the consultant relationship between ██████, ██████, and the County. In that regard, he has certainly been successful, as her legal counsel has informed us that she no longer will provide her company's services to the County. It has also left the County exposed to potential liability should its emergency system fail for lack of the expertise its consultant had provided on many occasions.

To date, the Sheriff has not articulated what "felony-level offenses" it believes ██████ or ██████ have committed, and the County Prosecutor's Office has not charged them. The Sheriff's recent report to the Department of Public Safety, which alleges that ██████ and ██████ are under criminal investigation by a "public corruption unit," adds additional defamatory fodder if ██████ pursues legal action against the County. Based on the County's investigation, ██████ is fully authorized and certified by LEADS to receive LEADS information. More importantly, Tyler New World records confirm that ██████ has not accessed the Tyler New World system since October 28, 2025, and has not entered the 9-1-1 Center since October 16, 2025. County 9-1-1 records indicate that the November "access" on ██████ account stems from a backup server at 9-1-1 – not direct access by her or her company. As a practical matter, and after consultation with Tyler New World support, County 9-1-1 could not remove or delete ██████ account as that would delete data and records created through that account. It has since been rendered "inactive," so no additional access could take place.

The Sheriff's claim to control over the County's emergency communications system is groundless and the Board will not agree to his assumption of control of any part of it. Nevertheless, if you believe a meeting would be productive, please provide dates and times for a meeting between our clients in the next two weeks.

Very truly yours,

Dennis M. O'Toole

DMO/mh


GMP | Gembala McLaughlin & Pecora



**EXHIBIT I**

**Richard D. Panza**

Attorney at Law
p: (440) 695-8055
RPanza@WickensLaw.com

January 5, 2026

**VIA EMAIL AND REGULAR U.S. MAIL**
dotoole@gmpfirm.com

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
5455 Detroit Road
Sheffield Village, Ohio 44054

      RE:    Lorain County's 9-1-1 System and Countywide Public Safety Communications System: The Sheriff's Duties and Obligations, and Consequent Audit and Review of the System.

Dear Attorney O'Toole:

This is in reply to your December 30, 2025, letter responding to my December 29, 2025, correspondence to Attorney Gembala. The basis upon which I directed my December 29 correspondence arose from a review of the Lorain County Board of Commissioners' ("Board") Resolution No. 25-797 (Nov. 2, 2025). It is presumed, regardless of your representation of the Board in the past, that your authority to proceed on its behalf, and that authority's limits, regarding the subjects of my December 29 correspondence, arise from that Resolution. Consequently, we will now direct our communications in regards to this matter to you.

Given your experience and stature in the legal community, we will presume that your letter's more florid expressions – such as accusing Sheriff Hall of "a political power grab at the expense of public safety" that "jeopardizes the health and safety of Lorain County residents and first responders," with the Sheriff supposedly "tak[ing] increasingly hostile action toward the Board's operation of the County's emergency communications systems seeking to bring the County to its knees" – is simple hyperbole. Such references otherwise could be characterized as malicious defamation. On behalf of my client, and presuming such speech does not continue, we will choose to ignore those insults and to pursue a resolution of the disputes based upon a good faith belief that each of our clients is acting in what each believes to be in the best interests of their shared constituency – the people of Lorain County and their first responders.

Setting aside the fact that we are both citing the same statute and the same August 24, 2011, Memorandum of Understanding ("MOU") but seemingly arriving at different conclusions, it is good to see that we both agree that the MOU is in full force and effect. Therefore, please note that any actions taken by my client have been taken pursuant to his duties and responsibilities as prescribed by that MOU, his statutory obligations and responsibilities, and his sole authority to operate Lorain County's Public Safety Communication System ("PSCS").

29461-301\3135935.docx

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
January 5, 2026
Page 2

The critical issue seems to be our clients' interpretations of the Sheriff's rights and duties arising from both the MOU and R.C. 307.63(B). That is the issue to be resolved. But, given the tone of your letter, it appears that any meeting of counsel would result in nothing more than verbally reiterating what counsel have already put forth in our respective correspondence. I do hope that is not the case. If my fear proves correct, then nothing short of a judicial determination of each party's rights and duties under the MOU can resolve the matter, at needless taxpayer expense.

Please further note that all actions taken by my client with regard to ███████ were required and authorized by law. Your reference to those actions, in unmitigated support for ███████, ill-serve the County's interests and may only serve to bolster and support whatever position ███████ personal attorney may take in the future. I fail to see how your client's position in this regard is in the best interests of Lorain County. Suffice it to say, my client stands ready to defend himself and his office with regard to all actions taken concerning ███████.

You also make an unspecified general allegation that the actions of my client are in some way affecting the health and safety of the residents of Lorain County. I am at a loss understanding those comments. Please provide specifics in support of this allegation.

Finally, your December 30 letter fails to recognize, even reference, the audit required to be conducted by my client, at the direction of the Ohio's Law Enforcement Agencies Data System ("LEADS"). My December 29 letter made clear that, although the Sheriff has already commenced the required reviews, in order to complete them the Sheriff will need unfettered and full access to the whole of Lorain County's 9-1-1 System, its infrastructure, policies, procedures, and personnel. Your letter was markedly silent on that point. Please let me know as soon as possible, hopefully within the next seven (7) days, whether the Board will cooperate with the Sheriff's Office in conducting the audit through personnel access and record reviews. Regardless, the Sheriff intends to complete the requisite reviews, with or without your client's cooperation.

Once again, allow me to reiterate my client's desire and willingness to permit his counsel and the Board's counsel to meet for settlement purposes only. But, if after a review of this correspondence your client feels such a meeting would be a waste of time, please advise me.

Sincerely,

WICKENS HERZER PANZA

*Richard D. Panza*

By: Richard D. Panza
Attorney at Law

RDP/tsc

cc: Sheriff Jack M. Hall
Thomas R. Theado, Esq.

29461-301\3135935.docx

<u>**EXHIBIT J**</u>



Gembala
McLaughlin
& Pecora
ATTORNEYS AT LAW

440.930.4001          5455 Detroit Road
www.gmpfirm.com     Sheffield Village, Ohio 44054

**Direct**: 440.930.4022
**Email**: dotoole@gmpfirm.com

January 12, 2026

**<u>VIA ELECTRONIC MAIL</u>**
Richard D. Panza, Esq. (rpanza@wickenslaw.com)
Wickens Herzer Panza
37655 Chester Road
Avon, OH  44011

Re:  Dispute between Lorain County Commissioners and Lorain County Sheriff
regarding Lorain County 9-1-1 Services

Dear Attorney Panza:

Thanks for your reply on January 5th, but it fails to address any of the issues raised by my letter, including (a) why Sheriff Hall initiated his "criminal investigation" of ▬▬▬▬ and ▬▬▬▬▬▬▬ and *what* "felony-level offenses" the Sheriff accuses her of, (b) why his "investigation" necessitated the immediate removal of ▬▬▬▬▬ and her business from the Tyler New World system and the 9-1-1 Center, and (c) whether the Sheriff will cease his attempts to control the County's emergency communications system.

On that last point, it is clear from your reply that the answer is a resounding "no." Your reply continues to assert that Sheriff Hall's recent actions have been taken pursuant to authority granted to him under the MOU and state law, when that is clearly not the case. Moreover, your client's belief that he has the "sole authority" to operate the County's emergency communications system leaves the Board with little option. How could your client possibly come to a meeting in good faith if his only goal is to assume total control of a system he has no authority to control?

Similarly, your implication of "malicious defamation" is laughable, and I hope you can avoid such baseless accusations in the future. My letter simply outlined what an objective observer could conclude from your client's actions, and there was nothing defamatory about it. I also struggle with your refusal to understand that Sheriff Hall's sudden expulsion of ▬▬▬▬ and ▬▬▬▬▬▬ has a real, deleterious effect on 9-1-1 operations, which in turn poses unnecessary risk to Lorain County residents and first responders. ▬▬▬▬▬ and her company served as the principal IT consultant for the County's Tyler New World system. Her company's expertise enabled it to quickly respond connectivity, operational, and other IT-related issues with Tyler New World and County

January 12, 2026
Page 2 of 2

9-1-1. In her absence, and until she can be replaced, the County's 9-1-1 system cannot work as efficiently, as County IT employees are burdened with additional tasks that they do not have specialized knowledge of. That is the entire point of hiring an outside IT expert consultant like ███████. ████████ and her team's ability to quickly troubleshoot issues was important to County 9-1-1 operations, and the County is in a worse position until they are replaced. It's alarming that your client so quickly dismisses that fact.

Finally, regarding your client's proposed "audit," you overstate the email response from Mr. Locke to "Sheriff Hill." There is no directive to complete a system-wide audit, in fact, there is no directive to conduct any audit at all. Instead, if Mr. Locke's email is related to Sheriff Hall's allegations against ███████, the "review" requested is limited to the alleged "security violation." Since all available evidence suggests that neither ███ ███████ nor her company committed any "security violation," it is difficult to ascertain what further review would be necessary. Likewise, given that this is a "reply" email, we can't properly assess what is required without the entire conversation. We'll be happy to discuss further once you provide the full communications between Sheriff Hall and Mr. Locke—or any other representative of Ohio LEADS.

Very truly yours,

Dennis M. O'Toole

DMO/mg

cc:  Ryan  M.  Gembala  (rgembala@gmpfirm.com),  Stephen  M.  Bosak (sbosak@gmpfirm.com), Thomas R. Theado (ttheado@wickenslaw.com)



DOOLEY GEMBALA
McLAUGHLIN PECORA
ATTORNEYS & COUNSELORS


WICKENS
HERZER
PANZA

**Richard D. Panza**
Attorney at Law
p: (440) 695-8055
RPanza@WickensLaw.com

January 21, 2026

**VIA EMAIL AND REGULAR U.S. MAIL**
dotoole@gmpfirm.com

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
5455 Detroit Road
Sheffield Village, Ohio 44054

      RE:    Lorain County's 9-1-1 System and Countywide Public Safety Communications System: The
                 Sheriff's Duties and Obligations, and Consequent Audit and Review of the System.

Dear Attorney O'Toole:

Thank you for your letter of January 12, 2026. I am hopeful that we can work out our clients'
differences on the 9-1-1 issues in a most expeditious and economical manner. Toward that end, upfront we
should clear up a possible misunderstanding. In your letter, you wrote that the Sheriff's "belief that he has
the 'sole authority' to operate the County's emergency communications system leaves the Board with little
option." My January 5 letter, however, stated that the Sheriff has "sole authority to operate Lorain County's
Public Safety Communication System ("PSCS")." Lorain County's PSCS is not at issue. The issues to be
resolved concern Lorain County's 9-1-1 System.

And the parties' August 24, 2011, Memorandum of Understanding ("MOU") clearly requires of our
clients a "collaborative effort." Indeed, the MOU repeatedly insists on collaboration, using the word at a rate
of more than once a page. Black's Law Dictionary defines "collaborate" as "working jointly with others in a
specific endeavor or project" that involves "cooperation of two or more parties to work together toward a
mutual objective, sharing ideas and resources." And that is exactly what the MOU requires of our clients,
"to collaborate in the merging of dispatch services provided by each party so as to achieve a single dispatching
unit to be located at the 9-1-1 Center."

More specifically, every paragraph of the MOU's "Section II - Equipment" require the parties to
collaborate on the acquisition and suitability of the communications equipment. "Section III - Personnel" of
the MOU calls for "the operation of the merged center to have the input and expertise of the Sheriff and his
staff [to] provide assistance, consultation and guidance relating to such activity," and goes on to provide that
"[t]he parties agree to collaborate ... in the implementation" of various procedures including the
reorganization of departments addressing staff functions, the preparation of Standard of Operations
Procedures, and the preparation of detailed training programs. The MOU makes patent that the parties'
required collaboration extends to staff changes including additional staffing, recruitment, and layoffs. The

29461-301\3140976.docx

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
January 21, 2026
Page 2

MOU at Section "IV - Operations" provides, "[i]n order to infuse the expertise and experience of the Sheriff, [that] the Sheriff will assist and collaborate in the conduct of day to day operations of the facility which require the qualifications and knowledge of safety force personnel," including (but not being limited to) these specific duties and responsibilities of the Sheriff:

- Creating and maintaining Standard Operating Procedures (SOPs);
- Imposing minor discipline such as instruction and cautioning, written and reprimands;
- Conducting background investigations for employees and investigations involving employee behavior issues;
- Determining personnel who shall conduct Pre-Disciplinary Hearings; and
- Determining who has access to Law Enforcement Automated Data System ("LEADS") and its management.

The express language of the MOU designates to the Sheriff significant duties and responsibilities including, but not limited to, the following:

- Collaborate on identification of equipment to be procured and/or upgraded to conduct law enforcement dispatching operations at the Lorain County 9-1-1 Center;
- Collaborate on evaluation of the Lorain County 9-1-1 Center to identify its present suitability for law enforcement dispatching operations;
- Collaborate on specifications for bids and/or requests for proposals to obtain equipment for the Lorain County 9-1-1 Center to accommodate the needs of law enforcement dispatching;
- Review and preparation of Standard of Operations Procedures for the combined operations of the Lorain County 9-1-1 Center;
- Preparation of a detailed training program for the unification of management and work functions, including conducting background checks for employees;
- Collaborate in the conduct of day-to-day operations of the Lorain County 9-1-1 Center which requires qualifications and knowledge of safety force personnel;
- Impose minor discipline to correct employee behavior issues, including instruction and cautioning with written reprimands;
- Collaborate in determining personnel who shall conduct pre-disciplinary hearings;
- Determine compliance with CJIS (Criminal Justice Information Services), LEADS, CCH and OHLEG rules, regulations, and laws, and determine which personnel will have access to that information; and
- Issue all warrants and related document preparation.

These duties and responsibilities of the Sheriff's Office are continuing in nature and, as a newly elected official, the Sheriff is especially entitled to a full review of the systems, records, and personnel, in order to properly and legally perform his duties proscribed by law and the MOU. Moreover, LEADS' response to the Sheriff's December 12, 2025, report of a potential CJIS security violation involving the public safety data system at Lorain County's 9-1-1 center, expressly stated that "[t]he review should include evaluation of authorization approvals, access justification, audit trail records, account and privilege management practices."

Therefore, upon these specific references set forth above, and in order to perform his duties and obligations, the Sheriff commenced his audit/review, as I set out in my December 29, 2025, letter to your colleague, Attorney Gembala, and in my January 5, 2026, letter to you. And, while that audit/review has

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
January 21, 2026
Page 3

already commenced, it is necessary that the Sheriff be provided copies of the following records in order to complete the audit/review:

1. Standard Operating Guidelines / Standard Operating Procedures for Lorain County 9-1-1;
2. Access Control Logs for physical access to Lorain County 9-1-1 ingress/egress for ▮▮▮▮ ▮▮▮▮ and members/employees of ▮▮▮▮▮▮▮▮▮ from January 1, 2025, through December 31, 2025;
3. Access Control System roster for all persons having ingress/egress rights to Lorain County 9-1-1 from January 1, 2025 through December 31, 2025;
4. Access Control Policy for Lorain County 9-1-1 On-Boarding and Off-Boarding policies for employees of Lorain County 9-1-1;
5. Visitor Logs of Lorain County 9-1-1 from January 1, 2025 through December 31, 2025;
6. Approved vendor list of entities that do business with Lorain County 9-1-1 that have un-escorted privileges;
7. Approved vendor CJIS training documentation and background investigation documentation as required per the CJIS security policy;
8. Background investigations files of each person employed by Lorain County 9-1-1 from January 1, 2025 through December 31, 2025;
9. Position descriptions of each employment and management position with Lorain County 9-1-1;
10. Organizational chart of Lorain County 9-1-1;
11. The written plan to reorganize the departments of Lorain County 9-1-1 as required pursuant to Article III, Section (A)(1) of the MOU;
12. All current collective bargaining agreements for represented employees;
13. All employment contracts for non-bargaining unit employees;
14. All contracts between Lorain County 9-1-1 and all current vendors;
15. All communications and training program documentation for current employees and non-employees trained from January 1, 2024 through the present;
16. All personnel files for current employees and former employees hired from January 1, 2024 through the present;
17. The names of all software used by Lorain County 9-1-1 and, if any of the software is licensed, provide copies of the license and service agreements for the licensed software;
18. The names, makes, and models of all hardware used by Lorain County 9-1-1 and, if any of the hardware is licensed, provide copies of the license and service agreements for the licensed hardware;
19. List the different levels of access for network domain controller accounts, and identify the types of network access accounts that have each level;
20. List all user accounts on the network from January 1, 2024 through the present, and show what level of access each user has, including service accounts;
21. List the different access levels for Tyler / New World accounts and identify what types of accounts have each level;
22. List all users in the Tyler / New World system from January 1, 2024 through the present, and show what access each user has;
23. Provide a diagram showing how the Lorain County 9-1-1 network is set up, including the hardware make and model and the software used;
24. Provide the policy that explains how user accounts are set up, how passwords are handled, and how access is taken away;

29461-301\3140976.docx

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
January 21, 2026
Page 4

25. Provide information on how Lorain County 9-1-1 tracks system activity, reviews those records, and reports access-related incidents;
26. Lorain County 9-1-1 vendor disciplinary procedures and documented discipline;
27. Lorain County 9-1-1 incident response policy and all reports of CJIS security incidents from January 1, 2024 through the present; and
28. Lorain County 9-1-1 video management policy, including video camera names connected to the video management system, microphones connected to the video management system and all recorded video (or access thereto) for the retention period defined by the policy.

Additional documents may be required consequent to the Sheriff's review of the documents listed above. All documents should be provided in printable format except for videos. Videos will be reviewed on site and will not have to be copied and/or stored upon any other medium. The documents will be reviewed by the Sheriff and members of the Sheriff's CJIS information technology team including the Sheriff's local agency security officer, IT staff, and terminal agency coordinator. All of these individuals are already CJIS certified and should have access to the requested information.

Additionally, the Sheriff requires interviews with the 9-1-1 personnel listed below, during their regularly scheduled work hours, staggered over several weeks. The people conducting the interviews will be the same staff mentioned above who will review the requested documents. The general subject matter to be discussed during the interviews will include fact-finding discussions on the County's 9-1-1 operations.

1. Jeff Armbruster – Lorain County Administrator
2. Karen Perkins – Lorain County Deputy Administrator
3. Todd Sharkey – Lorain County Information Technology Director
4. Russell Hines – Information Technology Specialist
5. Kurt Scholl – Lorain County 9-1-1 Director
6. Michael Davis – Lorain County 9-1-1 Assistant Director
7. Rebecca Pearson – Supervisor
8. Sarah Bursley – Supervisor
9. Danielle Larisch – Supervisor
10. Timmy Midkiff – Supervisor
11. Jason Smith – Supervisor
12. Kaylee McCoy – Supervisor
13. All current dispatch personnel

Interviews of additional personnel may be required consequent to the interviews of those listed above.

Kindly inform me within the next seven days whether the Board has the capacity to provide the requested records within 30 days of its receipt of this correspondence. If more time is required, please let me know that as very soon as possible, and please provide an approximation of how much additional time is needed. It is Sheriff Hall's desire to give the Board a reasonable amount of time to copy and provide the

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
January 21, 2026
Page 5

requested records and to make accommodations for the viewing of videos.  In regards to the requested interviews, it is the Sheriff's intention to begin the interviews within the next couple of weeks at the parties' mutual convenience, without disturbing or obstructing the day-to-day operations of the Lorain County 9-1-1 System.

Sincerely,

WICKENS HERZER PANZA

By:  Richard D. Panza
Attorney at Law

RDP/tsc

cc:     Sheriff Jack M. Hall
        Thomas R. Theado, Esq.

29461-301\3140976.docx

**EXHIBIT L**



**WICKENS
HERZER
PANZA**

**Richard D. Panza**

Attorney at Law
p: (440) 695-8055
RPanza@WickensLaw.com

January 30, 2026

**VIA EMAIL AND REGULAR U.S. MAIL**
dotoole@gmpfirm.com

Dennis M. O'Toole, Esq.
Gembala McLaughlin & Pecora
5455 Detroit Road
Sheffield Village, Ohio 44054

> RE: Lorain County's 9-1-1 System and Countywide Public Safety Communications System: The Sheriff's Duties and Obligations, and Consequent Audit and Review of the System.

Dear Attorney O'Toole:

Not having heard from you in reply to my January 21, 2026, letter detailing the Sheriff's records and interview requests, I must presume that the Board of Commissioners is refusing to produce the documents and/or permit the interviews to go forward. If my presumption is incorrect please so inform me by close of business on Monday, February 2, 2026, that the records will be produced within 30 days thereafter and that the interviews will go forward at the parties' mutual convenience. If I do not hear from you that the Board will timely cooperate, the Sheriff will have no alternative but to take the necessary steps to gain access to the requested documents and to conduct the requisite interviews without the Board's assistance.

Sincerely,

WICKENS HERZER PANZA

*Richard D. Panza*

By: Richard D. Panza
Attorney at Law

RDP/tsc

cc: Sheriff Jack M. Hall
Thomas R. Theado, Esq.

29461-301\3148609.docx



|  | 440.930.4001 | 5455 Detroit Road |
|---|---|---|
|  | www.gmpfirm.com | Sheffield Village, Ohio 44054 |

**Direct**: 440.930.4001
**Email**: dotoole@gmpfirm.com

February 2, 2026

**VIA EMAIL ONLY: rpanza@wickenslaw.com**
Richard D. Panza
Wickens Herzer Panza
35765 Chester Road
Avon, Ohio 44011

**RE: Lorain County 911 Services**

Rich:

As I highlighted in my January 12th letter, the Sheriff is under no directive or obligation to conduct a full audit of the County's participation in LEADS—and certainly under no directive (and has no authority) to waste county resources with a system-wide audit of 911 operations. My previous letter made two simple requests: (1) explain what "felony-level offenses" ███ and ███████ were accused of, and (2) provide the complete communications between the Sheriff and Ohio LEADS. You did not respond to either. Candidly, the origin of the Sheriff's alleged CJIS violation and this "audit" appears to be entirely pretextual. In each of my prior letters, I've requested that the Sheriff explain what crimes have been committed, and the Sheriff has never responded. How can the Board work "collaboratively" with the Sheriff when he cannot even articulate why he is proposing this "audit" in the first place?

Simply put, your client's invocation of the "collaborative" nature of the MOU is the epitome of hypocrisy. From the unfounded accusations and unilateral dismissal of ███ ███ and ███████ to the baseless proclamation that he has the "sole authority" to operate Lorain County's emergency communications systems,[1] the Sheriff has repeatedly attempted to usurp the Board's authority to the detriment of Lorain County residents and first responders. Your January 21st letter is but the latest example. The Sheriff feigns collaboration, then demands that the Board submit to 28 document requests (many with no date range) and more than a dozen interviews on "fact finding discussions on the County's 9-1-1 operations" without any explanation for why such an

---

[1] You continue to ignore that Lorain County's emergency systems, if they constitute "public safety communication systems," are exempt under R.C. 307.63(F). The Sheriff has **no** authority to participate in the operation of the emergency communications systems in Lorain County outside of the subordinate role provided under the MOU. Under the MOU, the Board is the ultimate authority regarding operations at Lorain County 911.

1

expansive investigation is needed. The contrived "CJIS security violation" involving ■■ ■■■■■ simply does not suffice.

I hope the parties can work cooperatively to resolve this issue. Once the Sheriff provides the information I've repeatedly requested, the parties can work collaboratively to assess (i) whether any CJIS security violation occurred, (ii) whether this necessitates additional audits are necessary, and (iii) if the Standard Operating Procedures for Lorain County 911 or training materials should be upgraded.

Respectfully,

Dennis M. O'Toole
DMO/am

cc:    Ryan M. Gembala (rgembala@gmpfirm.com)
       Stephen M. Bosak (sbosak@gmpfirm.com)
       Thomas R. Theado (ttheado@wickenslaw.com)[2]

---

[2] Please ensure that my colleagues, Ryan Gembala and Stephen Bosak, are included on all correspondence related to these matters.

2

**EXHIBIT N**



**Major Matthew Them, Chair, LEADS Steering Committee**

**LEADS STEERING COMMITTEE**

- Sheriff Randy Thorp
- Captain Dennis Swingley
- Sheriff Matthew Hafey
- Chief Gary D. Lewis, Jr.
- Director Shane McCracken
- Superintendent Bruce Pijanowski
- Judge Linda R. Warner

February 12, 2026

Director Kurt Scholl
Lorain County 911 Center
225 Burns Road
Elyria, OH 44035

Director Scholl:

The Law Enforcement Automated Data System (LEADS) has received notification that the Lorain County 911 Center is in breach of the Management Control Agreement with Lorain County Sheriff's Office, which is required by the FBI CJIS Security Policy for non-criminal justice agency access to CJIS systems. Specifically, the breach is concerning management control and access control responsibilities. Per Section 3.2.2 of the FBI CJIS Security Policy, the criminal justice agency must retain full authority over:

- Priorities;
- Standards for personnel selection, supervision, and termination;
- Security policies governing systems, devices, circuits, routers, firewalls, encryption, and associated infrastructure;
- Unauthorized personnel restrictions accessing CJIS-related equipment; and
- Operational compliance with both the criminal justice agency's policies and the CJIS Security Policy itself

Please submit a detailed response within 30 days of receipt of this letter, outlining:

- The specific steps that will be implemented to regain full compliance with the Management Control Agreement;
- A clear timeline for each corrective measure; and
- Documentation of completed or initiated actions to date.

Failure to respond or apply corrective action can result in sanctions under OAC 4501:2-10-11 and lead to the termination of the Lorain County 911 Center's ORI.

Respectfully,

Kevin J. Locke
Information Security Officer (ISO)
Ohio State Highway Patrol
1970 West Broad Street
Columbus, Ohio 43223

cc: Sheriff Jack M Hall

1970 West Broad Street    P.O. Box 182075    Columbus OH 43218-2075
LEADS CONTROL (800) 589-2077    FAX (614) 995-1230
LEADS Administration (614) 466-2754